BORN *v.* DILLMAN.

1. CONSTITUTIONAL LAW—ACTS OF GOVERNOR NOT SUBJECT TO JUDICIAL CONTROL.

   While duty of governor to deed land to railway company pursuant to provisions of contract authorized by statute may be said to be ministerial only, and not political, it calls for exercise of judgment on his part and is not subject to judicial control (1 Comp. Laws 1929, § 4454 *et seq.*).

2. SAME—JURISDICTION OF COURTS TO REVIEW GOVERNOR'S ACTS.

   In Michigan, courts have no jurisdiction to review any action performed by governor under power conferred on him either by Constitution or legislative enactment, and therefore mandamus will not lie to compel action on his part, nor will injunction issue to restrain such action.

3. SAME—RELATIONSHIP BETWEEN SUPREME COURT AND GOVERNOR OF STATE.

   Relationship existing between Supreme Court of Michigan and governor of State is quite similar to that existing between Supreme Court of United States and president thereof.

4. EQUITY—INJUNCTION—MANDAMUS—GOVERNOR.

   Bill at instance of taxpayers to restrain governor and other State officers from deeding land to railway company pursuant to provisions of contract authorized by statute, *held*, to present no case for equitable relief (1 Comp. Laws 1929, § 4454 *et seq.*).

Appeal from Oakland; Covert (Frank L.), Gillespie (Glenn C.), and Lamb (Fred S.), JJ., presiding. Submitted June 6, 1933. (Docket No. 20, Calendar No. 37,160.) Decided October 2, 1933.

Bill by Arthur C. Born and others against Grover C. Dillman, State Highway Commissioner, William A. Comstock, Governor, Frank D. Fitzgerald, Secretary of State, and Grand Trunk Western Railway

Company, to enjoin conveyance of properties purchased by the State to defendant railway company pursuant to 1 Comp. Laws 1929, § 4454 *et seq.* From order of Judges Covert and Lamb dismissing the bill, plaintiffs appeal. Affirmed.

*Atkinson, Ortman & Shock* (*Frank W. Atkinson,* of counsel), for plaintiffs.

*Patrick H. O'Brien,* Attorney General, and *Walter A. Kirkby,* Assistant Attorney General, for defendant State officers.

*H. V. Spike* and *John J. Gafill,* for defendant railway company.

SHARPE, J. The plaintiffs are residents and taxpayers of the county of Oakland. The defendants are the governor, the secretary of State, and the State highway commissioner, of the State of Michigan, and the Grand Trunk Western Railway Company.

Act No. 340, Pub. Acts 1927 (1 Comp. Laws 1929, § 4454 *et seq.*), authorized the governor and the State highway commissioner to enter into a contract with the Detroit, Grand Haven & Milwaukee Railway Company, now the Grand Trunk Western Railway Company, wherein, in consideration of the surrender by said railway company of the special charter granted to it by the territorial council of the Territory of Michigan on March 7, 1834, and certain undertakings on its part, the State of Michigan agreed to secure for it a new right of way nine and one-tenth miles in length in the county of Oakland; to take conveyances therefor in the name of the State, and, on full performance by the railway company, including payment therefor as therein

provided, to convey the same to it. The form of the contract which was to be entered into is set forth in full in the act. The purpose of the legislature in enacting this law and the object to be attained thereby are referred to at some length in *Fitzsimons & Galvin, Inc.,* v. *Rogers,* 243 Mich. 649, wherein the constitutionality of the law was assailed but upheld.

The bill of complaint alleges that the contract was entered into and that the State highway commissioner proceeded to secure the title in the State to the lands in such right of way by purchase and condemnation, and that transfer to the railway company is now contemplated.

The material allegations on which relief is sought are summarized by plaintiffs' counsel in their brief as follows:

"1. That lands in excess of those necessary for the project covered by said Act No. 340 have been purchased by the State highway commissioner without authority, and that said purchases are illegal and a fraud upon the plaintiffs and other taxpayers of the State of Michigan.

"2. That the purchase of unnecessary lands with State money, to be turned over to the railroad company for its private use is in violation of the provisions of article 10, § 12, of the State Constitution.

"3. That if the purchase of said lands was legal in the first instance, the conveyance of said lands as a part of the contract obligation, or for any other reason, would be illegal, being in contravention of article 10, § 12, of the State Constitution."

An injunction restraining the execution and delivery of a conveyance or conveyances of the properties so purchased to the railway company was prayed for. The defendants filed answers to the

bill, and with that of the State officers was a motion to dismiss for several reasons, among them being:

"1.    That there is no equity in the bill of complaint.

"2.    That this is in fact a suit against the State of Michigan contrary to its sovereignty and without its consent."

The motion came on for hearing before circuit judges Lamb, Covert, and Gillespie. The two former united in an opinion dismissing the bill for want of equity and because it was in fact a suit against the State. Judge Gillespie was of the opinion that the bill stated a cause of action and was not subject to the other objection referred to. From an order dismissing the bill, the plaintiffs have taken this appeal.

The sixth paragraph of the contract reads as follows:

"The deed or deeds of conveyance from the persons owning the lands to be acquired by the State for the new right of way of said railway company, shall be taken in the name of the State of Michigan, and when the State shall have acquired the title to all of said right of way and said railway company shall have completed the work to be by it done under this contract, the same shall be conveyed by the State to said railway company, and the governor of the State of Michigan is hereby authorized and empowered to make, execute, and deliver said deed or deeds of conveyance on behalf of the State, the same to be attested by the secretary of State of the State of Michigan, and acknowledged by them and each of them under the great seal of the State."

Plaintiffs here seek to enjoin the governor from the performance of the duty imposed on him under this paragraph. While the duty thus imposed on

him may be said to be ministerial only, and not political, it calls for the exercise of judgment on his part, and is not subject to judicial control.

It seems to be well established in this State that the courts have no jurisdiction to review any action performed by a governor under the power conferred upon him either by the Constitution or legislative enactment. Mandamus will not lie to compel action on his part, nor will an injunction be issued to restrain such action.

In the early case of *People, ex rel. Sutherland,* v. *Governor,* 29 Mich. 320 (18 Am. Rep. 89), a somewhat similar question was presented to this court. In that case the relators applied—

"for an order requiring the governor to show cause why he does not issue his certificate showing that the Portage Lake and Lake Superior ship canal and harbor have been constructed in conformity with the acts of congress making a land grant for the same, and the acts of the legislature of this State conferring the grant upon a corporation."

It was conceded on behalf of the governor that the work had been done and that the question was purely a judicial one "involving nothing but a proper construction of the law." In a lengthy and well-considered opinion, written by Mr. Justice COOLEY and concurred in by Justices CAMPBELL and CHRISTIANCY, it was held (syllabus):

"As to all authority specially confided to the governor, whether by the Constitution or by statute, it will be presumed that reasons of a conclusive nature required it to be so confided as an authority properly and peculiarly, if not exclusively, pertaining to the executive department, and therefore not subject to coercion by judicial process."

In the opinion it was said:

"Our government is one whose powers have been carefully apportioned between three distinct departments, which emanate alike from the people, have their powers alike limited and defined by the Constitution, are of equal dignity, and within their respective spheres of action equally independent. One makes the laws, another applies the laws in contested cases, while the third must see that the laws are executed. This division is accepted as a necessity in all free governments, and the very apportionment of power to one department is understood to be a prohibition of its exercise by either of the others. The executive is forbidden to exercise judicial power by the same implication which forbids the courts to take upon themselves his duties" (pp. 324, 325).

The contention that this rule should not apply when the duty is a purely ministerial one, which the legislature might have assigned to another State officer, is discussed at some length.

"But when duties are imposed upon the governor, whatever be their grade, importance, or nature, we doubt the right of the courts to say that this or that duty might properly have been imposed upon a secretary of State, or a sheriff of a county, or other inferior officer, and that inasmuch as in case it had been so imposed, there would have been a judicial remedy for neglect to perform it, therefore there must be the like remedy when the governor himself is guilty of a similar neglect. The apportionment of power, authority, and duty to the governor, is either made by the people in the Constitution, or by the legislature in making laws under it; and the courts, when the apportionment has been made, would be presumptuous if they should assume to declare that a particular duty assigned to the gov-

ernor is not essentially executive, but is of such inferior grade and importance as properly to pertain to some inferior office, and consequently, for the purposes of their jurisdiction, the courts may treat it precisely as if an inferior officer had been required to perform it. To do this would be not only to question the wisdom of the Constitution or the law, but also to assert a right to make the governor the passive instrument of the judiciary in executing its mandates within the sphere of his own duties. Were the courts to go so far, they would break away from those checks and balances of government which were meant to be checks of co-operation, and not of antagonism or mastery, and would concentrate in their own hands something at least of the power which the people, either directly or by the action of their representatives, decided to intrust to the other departments of the government'' (pp. 328, 329).

This decision has been cited with approval in *People, ex rel. Ambler,* v. *Auditor General,* 38 Mich. 746; *People, ex rel. Ayres,* v. *State Auditors,* 42 Mich. 422; *Shipman* v. *State Live-Stock Sanitary Commission,* 115 Mich. 488, and *Germaine* v. *Governor,* 176 Mich. 585 (46 L. R. A. [N. S.] 857, Ann. Cas. 1915 B, 418). In the *Ayres Case* it was said:

''It has also been held that we cannot interfere with the discretion of the chief executive of the State or subordinate him to our process.''

In the *Shipman Case:*

''If the governor should refuse to approve the award of the commission, courts could not interfere to compel him to approve the finding.''

The *Germaine Case* contains a lengthy quotation from the opinion. The second syllabus reads as follows:

''It is not important in Michigan whether the act of the executive is ministerial or judicial in its

nature; the judicial department is not authorized to interfere with the determination of a co-ordinate branch of the government, although the courts may exercise jurisdiction to pass upon the validity of the proceedings in a cause arising between private parties claiming rights thereunder."

The holding in the *Sutherland Case* is, in our opinion, in accord with the great weight of authority. Some of the State courts hold that the rule as stated is not applicable in cases where the governor is called upon to perform a ministerial duty only.

In *Rice* v. *Governor*, 207 Mass. 577 (93 N. E. 821, 32 L. R. A. [N. S.] 355), the court, after referring to and quoting from the opinion of Mr. Justice COOLEY, said:

"It seems better to hold that, for whatever he does officially, the governor shall answer only to his own conscience, to the people who elected him, and in case of the possible commission of a high crime or misdemeanor, to a court of impeachment."

The relationship which exists between this court and the governor of this State is quite similar to that existing between the supreme court of the United States and the president thereof. In *Mississippi* v. *Johnson*, 4 Wall. (71 U. S.) 475, the State sought by injunction to restrain President Johnson from the execution of the reconstruction acts of congress upon the allegation that they were unconstitutional. Chief Justice Chase, speaking for the court, said:

"The congress is the legislative department of government; the president is the executive department. Neither can be restrained in its action by the judicial department; though the acts of both,

when performed, are, in proper cases, subject to its cognizance.

"The impropriety of such interference will be clearly seen upon consideration of its possible consequences.

"Suppose the bill filed and the injunction prayed for allowed. If the president refuse obedience, it is needless to observe that the court is without power to enforce its process. If, on the other hand, the president complies with the order of the court and refuses to execute the acts of congress, is it not clear that a collision may occur between the executive and legislative departments of the government? May not the house of representatives impeach the president for such refusal? And in that case could this court interfere, in behalf of the president, thus endangered by compliance with its mandate, and restrain by injunction the senate of the United States from sitting as a court of impeachment? Would the strange spectacle be offered to the public world of an attempt by this court to arrest proceedings in that court?

"These questions answer themselves."

The decisions of the several State courts are reviewed at length and commented on in articles in 3 Mich. Law Rev. 631, and in 10 Mich. Law Rev. 458. In the latter, at page 473, it is said:

"There appears to be no case where an injunction has been issued against a State governor. In a few cases there are judicial opinions that the governor may be enjoined in connection with purely ministerial duties; but in other cases the courts have declined to enjoin the governor, and this rule would probably be followed at least in the States where a mandamus will not be issued."

It seems clear that the bill presents no case for equitable relief. The order dismissing it is affirmed.

As a question of grave public importance is involved, no costs will be allowed.

McDonald, C. J., and North, Fead, and Butzel, JJ., concurred with Sharpe, J. Wiest, J., concurred in the result. Potter, J., did not sit. Clark, J., took no part in this decision.