MAKOWSKI v GOVERNOR

Docket No. 307402. Submitted December 4, 2012, at Lansing. Decided December 27, 2012, at 9:10 a.m. Leave to appeal granted, 494 Mich 876.

Matthew Makowski filed an action in the Court of Claims against the Governor and the Secretary of State, seeking a declaratory judgment and injunctive relief to reverse then Governor Jennifer Granholm's decision to revoke her order of commutation of plaintiff's nonparolable life sentence that had been imposed for his first-degree murder and armed robbery convictions. Plaintiff filed an application for commutation of his sentence in January 2010, requesting that his sentence be commuted to parolable life. The parole board initially recommended to the Governor that the application had no merit, but on further review after a public hearing, recommended that the Governor grant plaintiff's application for commutation. Thereafter the Governor signed a commutation certificate. The certificate was delivered to the Office of the Great Seal on December 22, 2010, the Great Seal was affixed, and the document was signed by the Secretary of State. The document was then forwarded to the Department of Corrections, but it was not processed. On December 27, 2010, after the victim's family raised objections, the governor directed that she intended to revoke the commutation proceedings. The signed and sealed commutation certificate was retrieved from the Secretary of State's office and destroyed. The court, Richard D. Ball, J., granted defendants' motion for summary disposition, concluding that it lacked jurisdiction to review the governor's exercise of discretion over commutation decisions. Plaintiff appealed.

The Court of Appeals *held*:

1. Courts do not have jurisdiction to review any action performed by the Governor under powers conferred by the Constitution or legislative enactment. A case is nonjusticiable because it involves a political question when (1) the issue to be resolved involves a question that is reserved in the Constitution to a coordinate branch of government, (2) the court must move beyond its areas of judicial expertise to resolve the issue, and (3) there are prudential considerations for maintaining respect between the three branches that counsels against judicial intervention. The Governor has the author-

ity under Const 1963, art 5, § 14, to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, subject to the procedures and regulations prescribed by law. A political question is nonjusticiable when it implicates the separation of powers. The three branches of government are coequal and no branch may invade the province of another or control, direct, or restrain the action of another. The judiciary may not use its powers to usurp the power of a coordinate branch of government or inappropriately interfere with its business.

2. The trial court did not err by granting summary disposition in favor of defendants because review of the former Governor's commutation power presented a nonjusticiable political question. The Constitution expressly grants to the governor the exclusive power to grant commutations. MCL 791.243 and MCL 791.244, which are the procedures and regulations prescribed by law, detail the procedures for filing and reviewing commutation applications; they do not limit the governor's absolute discretion with regard to commutation decisions.

3. The judicial power does not include the power to legislate how and when a commutation decision becomes final and irrevocable. Nor may the judiciary dictate to the Governor which actions are proper and necessary in the exercise of the commutation power. There was no legal support for plaintiff's claim that the text of the original commutation certificate, along with the Governor's signature, being filed with the Secretary of State and the affixation of the Great Seal, made the commutation effective immediately and irrevocable. The former Governor expressed her clear intention to not commute plaintiff's sentence and judicial action to the contrary would be the functional equivalent of this Court granting plaintiff a commutation, which is constitutionally prohibited. The Governor's initial commutation decision did not confer on plaintiff a protected liberty interest because his status as a nonparolable life prisoner never changed.

4. Prudential considerations counseled against reviewing the commutation order. Judicial action would imply a lack of respect for the executive branch of government and would invade the exclusive province of the Governor to coerce an outcome that would be contrary to the former Governor's clear intention on a matter that was exclusively within her constitutional power.

Affirmed.

CONSTITUTIONAL LAW — SEPARATION OF POWERS — POLITICAL QUESTIONS — JUSTICIABILITY — COMMUTATION DECISIONS — REVIEW BY COURTS.

A case is nonjusticiable because it involves a political question when (1) the issue to be resolved involves a question that is reserved in

the Constitution to a coordinate branch of government, (2) the court must move beyond its areas of judicial expertise to resolve the issue, and (3) there are prudential considerations for maintaining respect between the three branches that counsel against judicial intervention; the Governor's decision to grant or deny a prisoner's application for commutation is not reviewable by the judiciary because it presents a nonjusticiable political question; the Governor has exclusive authority under Const 1963, art 5, § 14, to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, subject to the procedures and regulations prescribed by law; the judiciary does not traditionally review commutation applications and any judicial action would violate the separation of powers by invading the clear province of the Governor.

*Paul D. Reingold* and *Charles L. Levin* for Matthew Makowski.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *A. Peter Govorchin*, Assistant Attorney General, for the Governor and the Secretary of State.

Before: O'CONNELL, P.J., and CAVANAGH and DONOFRIO, JJ.

CAVANAGH, J. Plaintiff appeals by right the summary dismissal of his request for declaratory judgment and injunctive relief on his claim that former Governor Jennifer Granholm[1] exceeded her constitutional authority when she revoked or rescinded her purported commutation of his nonparolable life sentence. We affirm.

On February 2, 1989, plaintiff was sentenced by the Wayne Circuit Court to mandatory life in prison with-

---

[1] Governor Granholm was the incumbent governor during the relevant time periods in this case. This opinion's references to the "Governor" will therefore refer only to former Governor Granholm unless otherwise specified.

out the possibility of parole after being convicted of first-degree murder and armed robbery. In January 2010, plaintiff filed an application for commutation of his sentence, requesting that his sentence be commuted to parolable life. In May 2010, the application was reviewed by the parole board and resulted in a "no merit" recommendation to the Governor. The Governor then referred the matter to the Executive Clemency Advisory Council for further review and recommendation. Apparently after a favorable recommendation, the parole board again reviewed plaintiff's application and recommended that the matter continue to public hearing. Following the scheduled hearing, the parole board recommended to the Governor that plaintiff's application for commutation be granted and that his sentence be commuted to a parolable life sentence.

Subsequently, the Governor signed a commutation certificate. On December 22, 2010, the commutation certificate was delivered to the Office of the Great Seal where the Great Seal was affixed, and the document signed by the Secretary of State. It was then forwarded to the Michigan Department of Corrections (MDOC), but not processed. Thereafter, the victim's family contacted the Governor's office with objections. It appears that several e-mails were then transmitted between the Governor's office, a parole board member, and the MDOC regarding the purported commutation. Referenced in the e-mails were the facts that the commutation certificate was not processed by the MDOC and would be returned to the Governor's office.

On December 27, 2010, the former Governor issued a written directive to the Parole and Commutation Board to "halt all commutation proceedings," "prohibit [t]he release of [plaintiff]," and "rescind any and all certificates relating to the commutation." The directive fur-

ther provided that "it is my intention, as previously communicated, to revoke the commutation of [plaintiff's] sentence before fully effectuated." On December 29, 2010, the signed and sealed commutation certificate was retrieved from the Secretary of State's office by the Governor's office and it was subsequently destroyed.[2]

On May 19, 2011, plaintiff filed this lawsuit seeking a declaratory judgment and injunctive relief, alleging that the former Governor had officially commuted his sentence, that she lacked the power to revoke the commutation, and that the manner of revocation violated his due process rights. After the completion of discovery, defendants moved for summary disposition pursuant to MCR 2.116(C)(8), arguing that plaintiff's claim was unenforceable as a matter of law because the former Governor's actions were consistent with her constitutional powers and the commutation never became effective. Plaintiff responded to the motion, arguing that the signed and sealed commutation certificate was final and irrevocable. Further, plaintiff argued, once his request for commutation was granted, he acquired a liberty interest and was entitled to due process.

On November 15, 2011, the trial court issued a written opinion and order holding "that [the trial court] has no authority, *i.e.* no jurisdiction, to examine and/or approve the exercise by the governor of her constitutional authority to commute a prison sentence." That is, "because the federal and Michigan constitutions grant to the executive branch the authority to grant sentencing pardons, reprieves, and commutations, that [sic] the courts have no jurisdiction or authority to question the manner in which reprieves or commutations are granted or, for that matter,

---

[2] The parole board thereafter voted against recommending commutation of plaintiff's sentence and the newly elected Governor Snyder denied plaintiff's commutation application.

rescinded or revoked." Accordingly, the trial court concluded that plaintiff failed to state a cause of action and that dismissal was proper under both MCR 2.116(C)(4) and (C)(8). This appeal followed. Plaintiff challenges the trial court's holding that it lacked jurisdiction to decide the matter and further argues that the former Governor commuted his sentence through a final and irrevocable official act.

## I. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). Questions of law in declaratory judgment actions are also reviewed de novo, *Green Oak Twp v Munzel*, 255 Mich App 235, 238; 661 NW2d 243 (2003), as are jurisdictional questions, *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001), and constitutional issues, including whether the separation of powers doctrine applies. *Harbor Tel 2103, LLC v Oakland Co Bd of Comm'rs*, 253 Mich App 40, 50; 654 NW2d 633 (2002).

## II. JUSTICIABILITY

The first issue we must consider is whether the trial court properly concluded that it lacked jurisdiction to consider this matter. It appears the trial court concluded that plaintiff's claim challenging the former Governor's commutation power was nonjusticiable because it involved a political question implicating the separation of powers doctrine. We agree.

The separation of powers doctrine is explicitly established in Michigan's Constitution, Const 1963, art 3,

§ 2, which provides, "The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."

The three branches of our government are separate and coequal, a design that preserves the independence of the three branches of government. *Straus v Governor*, 459 Mich 526, 536; 592 NW2d 53 (1999). In *Kyser v Kasson Twp*, 486 Mich 514, 535; 786 NW2d 543 (2010), our Supreme Court explained:

> The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws; to the executive the duty of executing them; and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct or restrain the action of the other. [*Id.*, quoting *Massachusetts v Mellon*, 262 US 447, 488; 43 S Ct 597; 67 L Ed 1078 (1923).]

That is, "[b]y separating the powers of government, the framers of the Michigan Constitution sought to disperse governmental power and thereby to limit its exercise." *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 613; 684 NW2d 800 (2004), overruled on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 352; 792 NW2d 686 (2010).

In Michigan, the executive power is vested in the Governor. Const 1963, art 5, § 1. At issue in this case is the Governor's commutation power. A decision to commute a prisoner's sentence is within the scope of the Governor's authority as set forth in Michigan's Constitution. Const 1963, art 5, § 14 provides:

> The governor shall have power to grant reprieves,
> commutations and pardons after convictions for all of-
> fenses, except cases of impeachment, upon such conditions
> and limitations as he may direct, subject to procedures and
> regulations prescribed by law. He shall inform the legisla-
> ture annually of each reprieve, commutation and pardon
> granted, stating reasons therefor.

As the trial court noted in this case, a challenge to the Governor's commutation power naturally merits consideration of justiciability limitations. "Courts are bound to take notice of the limits of their authority, and a court may, and should, on its own motion . . . recognize its lack of jurisdiction and act accordingly . . . ." *In re Fraser Estate*, 288 Mich 392, 394; 285 NW 1 (1939). "Judicial power" cannot be used to usurp the power of a coordinate branch of government or to inappropriately interfere with its business. Const 1963, art 3, § 2; *United States v Munoz-Flores*, 495 US 385, 394; 110 S Ct 1964; 109 L Ed 2d 384 (1990). Accordingly, "[t]he nonjusticiability of a political question is primarily a function of the separation of powers." *Baker v Carr*, 369 US 186, 210; 82 S Ct 691; 7 L Ed 2d 663 (1962). As the United States Supreme Court held in *Baker*, "[i]n determining whether a question falls within [the political question] category, the appropriateness under our system of government of attributing finality to the action of the political departments and also the lack of satisfactory criteria for a judicial determination are dominant considerations." *Id.* (quotation marks and citation omitted; alteration in *Baker*).

In Michigan, whether a case is nonjusticiable because it involves a political question is determined through a three-part inquiry:

> (i) Does the issue involve resolution of questions com-
> mitted by the text of the Constitution to a coordinate
> branch of Government? (ii) Would resolution of the ques-

tion demand that a court move beyond areas of judicial expertise? (iii) Do prudential considerations [for maintaining respect between the three branches] counsel against judicial intervention? [*Wilkins v Gagliardi*, 219 Mich App 260, 265-266; 556 NW2d 171 (1996), quoting *House Speaker v Governor*, 443 Mich 560, 574; 506 NW2d 190 (1993), in turn quoting *Goldwater v Carter*, 444 US 996, 998; 100 S Ct 533; 62 L Ed 2d 428 (1979) (Powell, J., concurring), which cited *Baker*, 369 US at 217; quotation marks omitted.]

Our first inquiry, then, is whether and to what extent the issue of commutation is textually committed to the Governor as the holder of the executive power. See *Nixon v United States*, 506 US 224, 228; 113 S Ct 732; 122 L Ed 2d 1 (1993). In that regard, we examine art 5, § 14 to determine the scope of commutation authority conferred on the Governor. When interpreting constitutional language, we are mindful that our primary duty is to ascertain the purpose and intent of the provision. *Adair v Michigan*, 486 Mich 468, 477; 785 NW2d 119 (2010). The intent is that of the people who adopted the constitutional provision; thus, we apply the rule of common understanding that reasonable minds would give. *People v Nutt*, 469 Mich 565, 573-574; 677 NW2d 1 (2004).

The plain language of the Constitution expressly grants, the power of commutation to the Governor. The Governor's power under art 5, § 14 to "grant reprieves, commutations and pardons after convictions for all offenses" is mandatory and subject only to "procedures and regulations prescribed by law." See *Co Rd Ass'n of Mich v Governor*, 260 Mich App 299, 306; 677 NW2d 340 (2004) (noting that use of the word "shall" indicates a mandatory action). The "procedures and regulations prescribed by law" are set forth in MCL 791.243 and 791.244. In relevant part, MCL 791.243 provides that applications for commutations "shall be filed with the

parole board upon forms provided therefor by the parole board . . . ." MCL 791.244 then prescribes the procedures for processing and investigating such applications by the parole board, "[s]ubject to the constitutional authority of the governor to grant reprieves, commutations, and pardons . . . ." MCL 791.244(1).

These statutory provisions in no way limit the Governor's absolute discretion with regard to commutation decisions. See, e.g., *Rich v Chamberlain*, 104 Mich 436, 441, 444; 62 NW 584 (1895); *Berry v Dep't of Corrections*, 117 Mich App 494, 497-499; 324 NW2d 65 (1982). That is, although the parole board renders a recommendation for or against commutation, MCL 791.244(h) and (i), the Governor need not abide the recommendation, as evidenced by the facts of this case; plaintiff's application for commutation initially resulted in a "no merit" recommendation to the Governor. And unlike a parole board's decision whether to grant or deny parole, there are no such statutory guidelines limiting the Governor's discretion. See, e.g., MCL 791.233(1)(a); *In re Parole of Johnson*, 219 Mich App 595, 598-599; 556 NW2d 899 (1996). Consistent with this constitutional grant of absolute power to the Governor, it is well-established that the Legislature may not "pass a law that will infringe upon the exclusive power of the governor to commute a sentence," *People v Freleigh*, 334 Mich 306, 310; 54 NW2d 599 (1952), and "judicial actions that are the functional equivalent of a pardon or commutation are prohibited . . . ." *People v Erwin*, 212 Mich App 55, 63-64; 536 NW2d 818 (1995). Thus, we conclude that commutation decisions are wholly committed by the text of Michigan's Constitution to be exclusively within the Governor's power.

Plaintiff contends, however, that the former Governor granted his application for commutation and, by

changing her decision, she exceeded her constitutional power. We conclude that a resolution of the issue by the trial court, or this Court, would constitute mere guess and speculation, not the application of judicial expertise. There are no judicially discoverable and manageable standards of review regarding the matters of how and precisely when a commutation application is considered "granted," including the procedural formalities required for a commutation decision to become final and irrevocable. See *Nixon*, 506 US at 228. There is no identifiable textual limit on the power committed to the Governor by Michigan's Constitution and there are no statutory provisions that govern the commutation decision process. That is, the "procedures and regulations prescribed by law" do not set forth rules or describe any particular manner by which the Governor must exercise the power of commutation. See Const 1963, art 5, § 14. A judicial determination that imports definite procedural requirements and restrictions into the commutation process would constitute actions outside the purview of judicial function. See *Johnson v Kramer Bros Freight Lines, Inc*, 357 Mich 254, 258; 98 NW2d 586 (1959). The judicial power does not include the power to legislate how and when a commutation decision becomes final and irrevocable. See *Kyser*, 486 Mich at 535 (noting that the Legislature has the duty to make laws); *Roosevelt Oil Co v. Secretary of State*, 339 Mich 679, 694; 64 NW2d 582 (1954) ("[I]t is not the function of the court to legislate."). Nor can the judiciary dictate to the Governor which actions are proper and necessary in the exercise of the commutation power. See *Kyser*, 486 Mich at 535, quoting *Mellon*, 262 US at 488 (recognizing that the three branches of government cannot control, direct, or restrain the actions of, or invade the province of, another).

Plaintiff argues that the text of a commutation certificate makes it "effective immediately." However, plaintiff has set forth no authority to support his claim that the language of a commutation certificate, especially without concomitant action, has the force of law. Plaintiff also argues that his purported commutation became a final and irrevocable "official act of state upon being signed, filed with the Secretary of State, affixed with the Great Seal,[3] and delivered to the MDOC." However, plaintiff has cited no apposite legal authority in support of his position and we could find no such authority. Instead, plaintiff relies on the case of *Smith v Thompson*, 584 SW2d 253 (Tenn Crim App, 1979), which stands for the proposition that actions or inactions of the commuting Governor's subordinate officials or of a new Governor could not negate issued commutations "contrary to [the commuting governor's] obvious wishes." *Id.* at 257. With regard to the "validity of an intended act of pardon," that court focused on the commuting Governor's intention, holding that "the Governor who issued the commutation must intend that it become and be immediately effective and that the Governor never does or says anything inconsistent with that intention." *Id.* at 256. Unlike *Smith*, in the case before us the former Governor expressed her clear intention not to commute plaintiff's sentence; thus, any judicial action in defiance of that clear intention would be the functional equivalent of this Court granting plaintiff a commutation, which is constitutionally prohibited. See *Erwin*, 212 Mich App at 63-64.

To the extent that plaintiff argues that he acquired a constitutionally protected liberty interest as a conse-

---

[3] Although plaintiff argues that MCL 2.44(d) requires placement of the Great Seal on commutations of sentences, he cites no authority for the claim that such placement causes a commutation to be irrevocable.

quence of the former Governor's initial decision regarding his application for commutation, we disagree. A commutation results in a reduction of sentence. It is undisputed that plaintiff's status as a nonparolable life prisoner never changed and, consequently, he never came within the jurisdiction of the parole board. See MCL 791.234(6) and 791.234(7). Thus, plaintiff was never conferred any liberty interest and did not actually receive any benefit associated with the former Governor's initial commutation decision. Accordingly, his "unilateral hope" was never transformed into an "entitlement," as characterized by the United States Supreme Court in *Connecticut Bd of Pardons v Dumschat*, 452 US 458, 465; 101 S Ct 2460; 69 L Ed 2d 158 (1981), which further recognized that "[u]nlike probation, pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Id.* at 464.

Finally, we hold that prudential considerations counsel against judicial intervention in this matter. This conclusion is based on our recognition of the Governor's clear and exclusive constitutional power in the matters of commutation; the lack of procedures and standards governing the commutation decision process; the respect that must be accorded the separation of powers as delineated in Michigan's Constitution; and the fact that one consideration that has traditionally defined "judicial power" is "the avoidance of political questions or other non-justiciable controversies," *Nat'l Wildlife Federation*, 471 Mich at 614. It is well-established in this state that "the courts have no jurisdiction to review any action performed by a governor under the power conferred upon him either by the Constitution or legislative enactment." *Born v Dillman*, 264 Mich 440, 444; 250 NW 282 (1933). Michigan's Constitution empowers

the Governor, solely, to exercise judgment in commutation matters. A judicial decision on plaintiff's challenge to the former Governor's decision on his commutation application would, at minimum, imply lack of respect for the executive branch of government. More importantly, the exercise of judicial power in this matter would have the effect of invading the exclusive province of the Governor to coerce an outcome that is contrary to the former Governor's clear intention on a matter that was exclusively within her constitutional power. Michigan's Constitution forbids this intrusion. See *Kyser*, 486 Mich at 535.

In summary, plaintiff's challenge to the former Governor's commutation power presents a nonjusticiable political question. Accordingly, the trial court properly dismissed plaintiff's request for a declaratory judgment and injunctive relief for lack of jurisdiction over this matter. See *Allstate Ins Co v Hayes*, 442 Mich 56, 66; 499 NW2d 743 (1993).

Affirmed.

O'CONNELL, P.J., and DONOFRIO, J., concurred with CAVANAGH, J.