# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TODD ANTHONY COURSER,

        Defendant-Appellant.

FOR PUBLICATION
October 23, 2018
9:25 a.m.

No. 341817
Ingham Circuit Court
LC No. 16-000541-FH

Before: BECKERING, P.J., and RIORDAN and CAMERON, JJ.

CAMERON, J.

Defendant, Todd Courser, a former member of the Michigan House of Representatives, was charged with perjury, MCL 750.423, based on his testimony before a House Select Committee convened to evaluate claims of misconduct that questioned his qualifications to hold office. Courser filed a motion to dismiss the charge, claiming legislative immunity under the Michigan Constitution's Speech or Debate Clause, Const 1963, art 4, § 11. On December 14, 2017, the trial court denied the motion, reasoning that Courser does not have legislative immunity to make false statements under oath. This Court granted Courser's interlocutory appeal.[1] On appeal, Courser claims, *inter alia*, that the trial court erred when it denied his motion to dismiss because he is entitled to legislative governmental immunity and an evidentiary privilege. We disagree and therefore affirm.

## I. FACTUAL BACKGROUND

In November 2014, Courser was elected to the Michigan House of Representatives. On August 19, 2015, the House passed a resolution "to create a House select committee to examine the qualifications of Representative Cindy Gamrat . . . and Representative Todd Courser . . . and determine their fitness to continue holding the high office to which they were elected." In an investigative report, the House Business Office found that Courser had engaged in misconduct while in office. Relevant to this appeal, the House Business Office found that

---

[1] *People v Courser*, unpublished order of the Court of Appeals, entered March 28, 2018 (Docket No. 341817).

-1-

[t]here is testimonial and physical evidence that Representatives Courser and Gamrat forced their staff to forge their signatures on three bill "bluebacks" for introduction, namely House Bills 4174, 4317, and 4318. According to their staff, this was done in an attempt to quickly subvert the efforts of other Representatives to introduce similar legislation.

Courser's perjury charge was a result of testimony he gave before a Select Committee hearing. When asked if he instructed or allowed his staff to forge his signature to the blue backs, Courser stated:

No, I did not. What--I think that needs some clarification. Forging, obviously, is done without my knowledge or without my consent. The--the events that led up to--to that week, I can explain, if you wanna hear it. If you don't, somebody can object, I guess. Inside of that, the--I wasn't going to be available the day that those came back. I spoke to my chief of staff. I asked what was the process to be able to do that. In the legal profession, we do it. It's called signing for another. And so you can sign for other attorneys, attorneys I've never met, with their permission. And so I was--I was falling under that.

I asked my chief of staff at that point to speak with the [House] Business Office to say, is there an exception for that? My understanding was, and they affirmed to me, that, yes, it was not a problem to do that. I should've checked myself in regards to that. But that's actually how it happened. So when they came back, they let me know. And I said, yeah, well, if--if it's okay, go ahead and do it. So I should've checked and been more involved in that.

On September 11, 2015, Courser resigned from office, and in February 2016, he was charged with perjury and three counts of misconduct in office. At the preliminary hearing, Courser's former legislature director, Joshua Cline, testified for the prosecution that he signed the blue backs at Courser's direction. Cline said Courser lied at the Select Committee hearing, claiming his testimony "wasn't even remotely close to the truth that I knew." According to Cline, Courser simply instructed him to "just get it done."

Benjamin Graham, whom Cline described as Courser's "director of constituent services," also testified that Courser never asked him to contact the House Business Office to learn whether his staff could sign his name "to blue back legislation." Keith Allard, who was described as the chief of staff for Courser's and Gamrat's combined office, testified that Courser wanted to submit proposed legislation before another representative did so and, because he was not going to be present on the day the bill arrived, "he wanted a staff member to sign his name to that legislation." With respect to "signing blue backs," Allard denied that Courser directed him to consult the House Business Office for that purpose. The district court bound Courser over on the perjury charge and one charge of misconduct in office.

Courser filed a number of motions in circuit court, including a motion to dismiss, a motion for summary disposition, and a motion in limine to exclude testimony of conversations that he claimed had legislative immunity protection. The trial court addressed the numerous motions at a hearing held on December 14, 2017. The trial court concluded that Courser did not

have legislative immunity to lie under oath, regardless of the committee's purpose at the hearing. Thereafter, the trial court entered an order denying the motion to dismiss, the motion for summary disposition, and the motion in limine. On appeal, Courser argues that the trial court erred because he is afforded legislative immunity under the Speech or Debate Clause of the Michigan Constitution, Const 1963, art 4, § 11, that any conversation he had with House staff was inadmissible based on legislative immunity and the evidentiary privilege rule, and that the trial court should not have considered the prosecution's response briefing because it was filed late.

## II. STANDARD OF REVIEW

This Court reviews constitutional issues de novo. *People v Dipiazza*, 286 Mich App 137, 144; 778 NW2d 264 (2009). A trial court's ruling on a motion to dismiss is reviewed for an abuse of discretion. *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

## III. ANALYSIS

Courser's testimony provided before the House Select Committee was not a legislative act. Accordingly, he is not entitled to legislative immunity from the perjury charge. Furthermore, Courser's testimony and conversations relating to the signing of blue backs are not protected by the evidentiary privilege under the Speech or Debate Clause. Therefore, Courser's claims are without merit.

## A. LEGISLATIVE IMMUNITY

The Speech or Debate Clause of the 1963 Michigan Constitution provides:

> Except as provided by law, senators and representatives shall be privileged from civil arrest and civil process during sessions of the legislature and for five days next before the commencement and after the termination thereof. They shall not be questioned in any other place for any speech in either house. [Const 1963, art 4, § 11.[2]]

The second sentence is at issue in this case. "Read literally, the [second] clause only provides senators and representatives with immunity for speeches made in either house—that is, from being 'questioned in any other place for any speech in either house.'" *Cotton v Banks*, 310 Mich App 104, 112; 872 NW2d 1 (2015). However, "[b]ecause Michigan's Speech or Debate Clause

---

[2] The "immunity" granted by this provision was codified in 1984. *Wilkins v Gagliardi*, 219 Mich App 260, 271; 556 NW2d 171 (1996). MCL 4.551 provides, "A member of the legislature of this state shall not be liable in a civil action for any act done by him or her pursuant to his or her duty as a legislator."

is substantially similar to the Speech or Debate Clause found in the Constitution of the United States,[3] it should be similarly construed." *Id*.

The Speech or Debate Clause "should be read broadly to effectuate its purpose." *Prelesnik v Esquina*, 132 Mich App 341, 347; 347 NW2d 226 (1984), citing *Eastland v United States Servicemen's Fund*, 421 US 491, 503; 95 S Ct 1813; 44 L Ed 2d 324 (1975). "The Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel v United States*, 408 US 606, 616; 92 S Ct 2614; 33 L Ed 2d 583 (1972); see also *United States v Johnson*, 383 US 169, 181; 86 S Ct 749; 15 L Ed 2d 681 (1966) (stating that the clause's purpose was "to prevent intimidation by the executive and accountability before a possibly hostile judiciary").

The Speech or Debate Clause's protections are absolute. *Eastland*, 421 US at 501. However, "[i]n order for the conduct to be protected under the Speech or Debate Clause, it must fall within the legislative sphere." *Wilkins v Gagliardi*, 219 Mich App 260, 268; 556 NW2d 171 (1996). "The heart of the Clause is speech or debate in either House." *Gravel*, 408 US at 625. In order for the Clause to apply to other legislative acts,

> they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. [*Id*.]

"A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it." *United States v Brewster*, 408 US 501, 512; 92 S Ct 2531; 33 L Ed 2d 507 (1972).

Michigan courts have applied the current Speech or Debate Clause to civil actions only. See *Cotton*, 310 Mich App at 116 ("A legislator is immune from civil liability for any activities that fall within the legislative sphere.") (quotation marks and citation omitted). However, the

---

[3] The Speech or Debate Clause found in the United States Constitution provides as follows:

> The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place. [US Const, art I, § 6, cl. 1.]

This Court first incorporated principles governing the federal clause in *Prelesnik v Esquina*, 132 Mich App 341, 347; 347 NW2d 226 (1984).

United States Supreme Court has "long held that, when it applies, the Clause provides protection against civil as well as criminal actions, and against actions brought by private individuals as well as those initiated by the Executive Branch." *Eastland*, 421 US at 502-503. The Court read its decision in *Johnson*, 383 US 169, as holding "that a Member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely on legislative acts or the motivation for legislative acts." *Brewster*, 408 US at 512.

In this case, the parties dispute whether Courser's testimony before the Select Committee constitutes an act protected by the Speech or Debate Clause. We conclude that a legislator's testimony in a hearing to determine that person's qualifications to hold office is not a protected legislative act under the Speech or Debate Clause.

The Select Committee was certainly engaged in a protected activity when it convened to examine Courser's qualifications. "The power to investigate and to do so through compulsory process plainly falls within" the legislative sphere. *Eastland*, 421 US at 504; see also *Hutchinson v Proxmire*, 443 US 111, 124; 99 S Ct 2675; 61 L Ed 2d 411 (1979) (noting "that committee hearings are protected [by the Speech or Debate Clause], even if held outside the Chambers; committee reports are also protected."). The United States Supreme Court "has often noted that the power to investigate is inherent in the power to make laws because '(a) legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.' " *Eastland*, 421 US at 504, quoting *McGrain v Daugherty*, 273 US 135, 175; 47 S Ct 319; 71 L Ed 580 (1927). Further, the House has constitutional authority to determine the qualifications of its members. See Const 1963, art 4, § 16. In *Rangel v Boehner*, 415 US App DC 60, 64-66; 785 F3d 19 (2015), the court determined that a congressional disciplinary proceeding was a legislative matter and therefore the defendants, including the presiding House Members, were immune from suit brought by the censured Member.

But the question in this case is whether Courser, as a testifying witness[4] before the Select Committee, was acting within the legislative sphere. The prosecution identifies two cases supporting the conclusion that he was not.

In *Fed Election Comm v Wright*, 777 F Supp 525, 527-528 (ND Tex, 1991), a former House member (Wright) argued that, under the Speech or Debate Clause, he did not have to answer questions posed to him by the Federal Election Commission. The federal district court rejected that argument, primarily because the questions "quite clearly are directed to development of information concerning activities occurring outside, and away from, the House, and which are totally unrelated to anything done in the course of the legislative process or any motivation for any such thing." *Id*. at 529. The court also rejected Wright's argument that his previous testimony[5] before the House Committee on Standards of Official Conduct immunized

---

[4] Courser's contention that he was not a witness at the hearing is without merit. A witness is "[o]ne who gives testimony under oath or affirmation." *Black's Law Dictionary* (7th ed).

[5] Wright had not yet resigned from office when he testified before the Committee. *Wright*, 777 F Supp at 532.

him "from being required to give testimony on the same subject in any other context." *Id*. at 530. The court reasoned that

> [t]his argument overlooks that any testimony given by Wright to the Committee on Standards was given by him in his capacity as a witness and not in his legislative capacity with the consequence that no immunity attached by virtue of the Clause. The report [generated by the Committee] itself undoubtedly should be viewed to be a legislative act, and there is no doubt that legislative acts went into the preparation of the report. However, none of those legislative acts were of Wright. He is no more protected from the use of the report than is any other citizen. [*Id*. at 530.]

The prosecution also relies on *United States v Rose*, 28 F 3d 181, 182 (1994), in which the Department of Justice brought a civil action against a congressman (Rose) based on his testimony before the House Committee on Standards of Official Conduct. The District of Columbia Circuit held that the clause did not apply because Rose's testimony did not relate to legislation:

> The testimony related to allegations that Congressman Rose had violated the Ethics Act by failing to report various personal loans and included detailed explanations of each financial transaction at issue. The testimony was not addressed to a pending bill or to any other legislative matter; it was, instead, the Congressman's defense of his handling of various personal financial transactions. In short, Congressman Rose was acting as a witness to facts relevant to a congressional investigation of his private conduct; he was not acting in a legislative capacity. [*Id*. at 188 (citation omitted).]

The court indicated that it was irrelevant that Rose's statements were made in a committee room rather than on the House floor: "[W]e rely not on the fact that Congressman Rose testified in a committee room but on the fact that his testimony was given in a personal capacity rather than 'in the performance of [his] official duties'; we focus on what Congressman Rose said, not where he said it." *Id*. The court also emphasized that its decision was based on "the content of the [congressman's] speech," stating that "the key factor is the subject matter of the speech, not the identity of the listener." *Id*. at 189.

*Wright* and *Rose* support the prosecution's position that a representative testifying before a House committee concerning the representative's qualifications to hold that office is not performing a legislative act. In both cases, the House Committee on Standards of Official Conduct was investigating the representative's personal conduct. The representatives' individual testimony in those cases did not relate to the legislative process. The same is true in this case. The hearing was convened to examine Courser's qualifications to hold office. Courser focuses on the fact that the allegedly perjurious statement related to the signing of legislation. As will be discussed below, there is an evidentiary privilege to the Speech or Debate Clause. Any statement made by Courser that is protected by the Speech or Debate Clause cannot be used as evidence against him. But, as a general matter, Courser's testimony was addressing his misconduct in office. Therefore, he was not performing an act integral to the legislative process, and he is not entitled to the absolute protections of the Speech or Debate Clause.

We see no issue in concluding that the Speech or Debate Clause does not protect Courser even though it protects the members of the Select Committee questioning him. Courser relies on *Allard v Michigan House of Representatives*, 200 F Supp 3d 703 (WD Mich, 2016), an action brought by Allard and Graham in which they claimed that they were wrongly terminated for reporting Courser's and Gamrat's misconduct. In that case, the plaintiffs "acknowledged that statements made during the committee proceedings are subject to legislative immunity." *Id*. 711-712. Viewed in context, the plaintiffs were merely conceding that statements made by the defendant at the hearing(s) were subject to legislative immunity; the court did not decide the issue. In any event, although the Select Committee was not investigating Courser for the purpose of enacting legislation, the Select Committee was performing its constitutional duty. Const 1963, art 4, § 16 ("Each house shall be the sole judge of the qualifications, elections and returns of its members.").

Even though legislation was not at issue, the House's independence is protected by immunizing it from civil suits based on statements made in a qualifications hearing like Courser's. In contrast, no policy consideration is furthered by insulating Courser's testimony before the Select Committee. Courser was not testifying to legislative matters. Rather, he was testifying in his personal capacity in an attempt to prove that he was fit to hold office, a matter which simply does not implicate the policies behind the Speech or Debate Clause. For those reasons, the Speech or Debate Clause does not protect Courser from prosecution.

## B. EVIDENTIARY PRIVILEGE

Even if a legislator is not immune from prosecution, "evidence of a legislative act of a Member may not be introduced by the Government" in that prosecution. *United States v Helstoski*, 442 US 477, 487; 99 S Ct 2432; 61 L Ed 2d 12 (1979). In *Helstoski*, 442 US at 479-480, a congressman testified before (and produced evidence to) grand juries investigating him for political corruption, including allegations that he introduced "private bills" in exchange for money. The congressman was eventually charged "with various criminal acts" and sought to dismiss the indictment on the grounds that it violated the Speech or Debate Clause. *Id*. at 484. Ultimately, the Supreme Court upheld the lower court's evidentiary ruling that the government would not be allowed to introduce evidence referencing the defendant's past legislative acts. *Id*. at 484-485, 488-489; see also *Johnson*, 383 US at 185-186 (holding that a former congressman was entitled to a new trial when the prosecutor questioned him about a speech he gave in the House, and the motives thereof, which were subjects protected by the Speech or Debate Clause.)

*United States v Swindall*, 971 F2d 1531 (CA 11, 1992) is instructive as to how evidentiary privilege is applied in a perjury prosecution. In that case, a congressman (Swindall) appeared before a grand jury investigating money-laundering activities as a "subject" of that investigation. *Id*. at 1538. "In the grand jury proceeding, the [government] sought to establish, by questioning Swindall, that because of his memberships on the House Banking and Judiciary Committees, Swindall had knowledge of the money-laundering and transaction-structuring statutes." *Id*. at 1539. Following his grand jury appearance, Swindall was charged with numerous counts of perjury before the grand jury. *Id*. at 1538. At trial, the government used Swindall's committee memberships to show that he "lied when he told the grand jury that he was not convinced of the criminality of the proposed transactions" for which he was being investigated. *Id*. at 1539. Swindall was subsequently convicted of nine counts of perjury. *Id*. at

1539. The Eleventh Circuit held that the government's questions about Swindall's committee memberships before the grand jury and the references to those memberships at trial violated the Speech or Debate Clause. *Id*. at 1543. Consequently, the court dismissed the three counts of perjury relating to that evidence. *Id*. The court determined that the Speech or Debate Clause "privilege protects legislative status as well as legislative acts." *Id*. at 1543. Further, the court found that an inquiry into Swindall's committee membership essentially constituted an inquiry into his legislative activities. *Id*. at 1546.

The act of testifying before a grand jury is not an act protected by the Speech or Debate Clause. See *United States v Dowdy*, 479 F2d 213, 224 (CA 4, 1973). This is a nuanced distinction. In *Swindall*, the congressman could not be prosecuted for perjury for testimony related to protected legislative activities. In this case, Courser argues that statements he made to the Select Committee relating to the signing of blue backs are plainly "within the 'legislative sphere' " and so are protected by the Speech or Debate Clause.

Courser's allegedly perjurious testimony bears some relation to the legislative process. The signing and submission of proposed legislation could be considered necessary or "integral" to the legislative process. *Gravel*, 408 US at 625. But "[t]he Speech or Debate Clause does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions." *Brewster*, 408 US at 528. "[C]ourts have extended the privilege to matters beyond pure speech or debate in either House, but 'only when necessary to prevent indirect impairment of such deliberations.' " *Gravel*, 408 US at 625 (citation omitted).

A recent decision by this Court is helpful in analyzing whether statements regarding the signing of blue backs should be protected by the Speech or Debate Clause. In *Cotton*, 310 Mich App at 122-123, this Court adopted "the functional approach stated in *Forrester* [*v White*, 484 US 219; 108 S Ct 538; 98 L Ed 2d 555 (1988)]"[6] for determining whether a personnel decision is a legislative act protected by the Speech or Debate Clause. "In applying that approach, courts should be careful to distinguish between true legislative acts, which are entitled to absolute immunity, and acts that merely happen to have been performed by a legislator, but are otherwise administrative in nature." *Cotton*, 310 Mich App at 123. This analysis turns on whether it will be necessary to "inquire into the legislator's legislative acts—'how [the legislator] spoke, how he debated, how he voted, or anything he did in the chamber or in committee'—in order to prove the claim." *Id*., quoting *Fields v Office of Eddie Bernice Johnson*, 373 US App DC 32; 459 F3d 1 (2006).

Signing legislation, while obviously related to the legislative process, is an administrative function. The pertinent testimony does not involve substantive discussion of the bills Courser was introducing or his reasons for doing so. Although the Speech or Debate Clause should be read broadly to accomplish its purpose, Courser is not being prosecuted for any speech, debate, or deliberation pertaining to the bills. Rather, he is being prosecuted for his personal conduct at

---

[6] *Forrester* concerned "whether a judge had absolute immunity from suit under the common law for allegedly terminating an employee on the basis of her sex in violation of the federal Civil Rights Act." *Cotton*, 310 Mich App at 117-118.

a hearing called to address his potential misconduct in office. Inquiry into his conduct is not precluded simply because it "has some nexus to legislative functions." *Brewster*, 408 US at 528. For those reasons, a prosecution based on Courser's testimony before the House Select Committee does not violate the Speech or Debate Clause.

Courser also argues that his "initial conversation" with Allard, his chief of staff, "about whether someone could sign a blue back on behalf of [Courser]" is protected by the Speech or Debate Clause. He adds that "[a]ny conversation between [Courser] and any other House member o[r] staff member is equally protected from disclosure." As with his testimony, it is the substance of Courser's conversations that determines whether the Speech or Debate Clause applies. See *Gov't of Virgin Islands v Lee*, 775 F2d 514, 522 (CA 3, 1985) ("It is the content of [the Virgin Island legislator's] private conversations [with government officials], and not the mere fact that the conversations took place, that determines whether [he] is entitled to legislative immunity."). For the reasons discussed above, conversations about signing the blue backs are not protected by the Speech or Debate Clause.

With respect to Allard, the prosecution notes that the trial court "ruled that Allard could testify that Courser never asked him to check with the House Business Office." But Courser is not arguing that this specific conversation is protected by the Speech or Debate Clause. Courser notes that there is evidence that he and Allard discussed whether a staff member could sign Courser's name to a blue back. In other words, Courser is arguing that, as a general matter, *any* conversation about signing blue backs is protected, which presumably includes whether Courser directed Allard to the House Business Office to determine if someone could sign the blue backs on Courser's behalf. So, to resolve Courser's argument, it is not enough to say this particular conversation between him and Allard allegedly never happened.[7]

In conclusion, Courser is entitled to neither legislative immunity nor an evidentiary privilege under the Speech or Debate clause. Because the trial court properly denied Courser's legislative immunity and evidentiary privilege claims, we do not address the remainder of his arguments on appeal.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Michael J. Riordan

---

[7] We note that Allard testified to Courser's motive for introducing the bills, i.e. he wanted to submit the legislation before another representative. Courser does not raise this point, but testimony regarding his motive for introducing the bills is a matter squarely protected by the Speech or Debate Clause. See *Johnson*, 383 US at 184-186.