*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 10, 2020

Plaintiff-Appellee,

v

No. 347009
Clinton Circuit Court
LC No. 2017-009966-FC

DOUGLAS FLOYD HILL,

Defendant-Appellant.

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of seven counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (sexual penetration with a person under the age of 13), and four counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with a person under the age of 13). The trial court sentenced defendant to prison terms of 25 to 50 years for each CSC-I conviction and 9 to 15 years for each CSC-II conviction, to be served concurrently. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was convicted of sexually molesting his nieces, AH and SH, who were 12 and 9 years old, respectively, at the time of trial. AH and SH testified that the abuse occurred at the home of defendant and his wife while they were babysitting the girls. AH also testified that defendant had taken pictures of her with his tablet computer while she was naked, and had stored them in a special "vault" on the device, which she showed police how to access. Police discovered an application on the tablet computer that contained a hidden photo or document vault, but were unable to locate any photographs of AH other than one that she had taken as a demonstration. However, a forensic computer examiner discovered 336 deleted images of child pornography on a home computer that belonged to defendant's son, NH. Ten of these images were shown to the jury; they depicted sexual acts between adult males and prepubescent girls. The examiner was not able to tell when the images were downloaded or last accessed, or who was using the computer when the images were downloaded. The examiner testified that he also interviewed NH, who stated that his computer was password-protected, but that he would sometimes leave the computer

-1-

unlocked. According to the examiner, NH denied downloading or viewing the images. NH did not testify. Defendant testified and denied committing any sexual abuse, taking nude pictures, or downloading child pornography.

The jury convicted defendant as described. This appeal followed.

## II. OTHER-ACTS EVIDENCE

Defendant argues that the trial court erred by admitting into evidence images of child pornography that were found on a computer in the bedroom of defendant's son. "[W]e review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). We review de novo questions of statutory interpretation. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Courser*, 326 Mich App 298, 305; 926 NW2d 299 (2018).

The trial court admitted the photographs under MCL 768.27a(1). MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Possession of child pornography is a listed offense, as are CSC-I and CSC-II committed against minors. See MCL 768.27a(2)(a); MCL 28.722(l), (s)(*i*), (t)(*x*), and (w)(*iv*).

"Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Watkins*, 491 Mich at 470, quoting MRE 401. "A defendant's propensity to commit criminal sexual behavior can be relevant and admissible under [MCL 768.27a] to demonstrate the likelihood of the defendant committing criminal sexual behavior toward another minor." *People v Brown*, 294 Mich App 377, 386; 811 NW2d 531 (2011), quoting *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008). See also *Watkins*, 491 Mich. at 470.

Even when other-acts evidence is relevant and admissible under MCL 768.27a, a trial court "must still employ the balancing test of MRE 403." *Brown*, 294 Mich App at 386. Under MRE 403, otherwise relevant evidence may be excluded if, among other considerations, "its probative value is substantially outweighed by the danger of unfair prejudice." "Propensity evidence is prejudicial by nature," which is why it is normally precluded under MRE 404(b)(1). *Watkins*, 491 Mich at 486. To effectuate the Legislature's intent in enacting MCL 768.27a, "when applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487. Other-acts evidence under these circumstances "may not be excluded . . . as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*.

This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged

crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487-488 (citation omitted).]

## A. RELEVANCE

Defendant first argues that the child pornography images found on the computer in his home were not relevant to whether he had sexually assaulted the victims. We disagree.

The images depicted explicit sexual acts between adult men and prepubescent girls. The evidence was admissible under MCL 768.27a to show defendant's propensity for sexual attraction to prepubescent girls. *Brown*, 294 Mich App at 386. In determining relevance, the trial court was to consider the evidence's materiality and probative value. See *People v Henry*, 315 Mich App 130, 144; 889 NW2d 1 (2016). The photographs were material to a matter at issue in the case, because they could be used to demonstrate the likelihood that defendant had committed other criminal sexual acts involving a minor. *Brown*, 294 Mich App at 386. And they were probative for the same reason, as they tended to make it more probable that defendant had committed the crimes charged. *Watkins*, 491 Mich at 470. Moreover, because AH had testified that defendant took nude pictures of her and stored them on his tablet computer, an electronic device, defendant's possession of similar images stored on an electronic device would enhance her credibility, which is almost always relevant. See *People v Mills*, 450 Mich 61, 72; 537 NW2d 909 (1995), mod in part on other grounds, 450 Mich 1212 (1995).

Defendant argues that the pictures were not relevant because there was a lack of evidence linking him to the computer on which the images were found. But his argument on this issue goes to the weight of the evidence, not its admissibility. See *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 154; 908 NW2d 319 (2017). Moreover, we disagree with defendant's underlying premise that no evidence linked him to the child pornography images. The computer was found in defendant's home. Although it was located in NH's bedroom, and NH told the police that the computer was his and that it was generally password-protected, NH denied that he had accessed the pornography and he stated that he sometimes would just leave the computer on and unprotected. With this information, the jury could have reasonably inferred that defendant had access to the computer and had downloaded the images. Although there was evidence in support of the opposite conclusion as well, this conflicting evidence went to the evidence's weight, not its admissibility. See *People v Barrera*, 451 Mich 261, 289; 547 NW2d 280 (1996).

## B. MRE 403

Defendant also argues that, even if the images were marginally relevant, they should have been excluded under MRE 403 because their relevance was substantially outweighed by the danger of unfair prejudice. We disagree.

Although the act of downloading child pornography is not the same act as the charged crimes of CSC-I and CSC-II, the acts are similar because the images depicted acts of sexual

-3-

penetration of prepubescent girls and defendant was charged with acts of digital and oral penetration of prepubescent girls. *Watkins*, 491 Mich. at 487-488. In addition, the pornography is substantially similar to the uncharged acts of taking nude pictures of AH. And given that both AH and SH had complained of repeated acts of abuse over several years, the trial court could properly find that there was a relatively close temporal proximity between the charged acts and the acts of downloading the child pornography, even though the evidence did not show when the images were downloaded. *Id*. Such a finding would also be appropriate with regard to the uncharged acts of taking pictures of AH while naked, because both the computer and the tablet were found during the search of the home. Moreover, as discussed, the jury could have concluded that the images had been downloaded or stored on the computer by defendant. Finally, because there was no physical evidence of the alleged sexual abuse and defendant denied that any abuse had occurred, evidence beyond the testimony of AH and SH was not unnecessary. *Id*. The relevant *Watkins* factors therefore support the trial court's decision to admit evidence that defendant had possessed images of child pornography.

Whether 10 of the 336 images should have been shown to the jury, rather than introducing evidence of the images in some other way, is a closer call. Defendant argues that the images should have been excluded because of their inherent prejudicial effect, given that the images were particularly heinous and shocking. But "[g]ruesomeness alone need not cause exclusion. The proper inquiry is always whether the probative value of the photographs is substantially outweighed by unfair prejudice." *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995). "[O]therwise admissible [photographs] . . . are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking . . . crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id*. at 77 (citations and quotation marks omitted). Nonetheless, "[p]hotographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions." *Id*. (citations and quotation marks omitted).

Images of this type are undoubtedly shocking, and we are mindful of the risk that they may have aroused the jury's passion or prejudice against defendant. However, viewing the totality of the circumstances, we conclude that the trial court acted within the range of principled outcomes. *Courser*, 326 Mich App at 305. Of the 336 child pornography images recovered, only 10 were shown to the jury. As discussed, the evidence was highly relevant to defendant's propensity to commit criminal sexual acts involving a minor. And the trial court extensively instructed the jury concerning this evidence, informing the jury that it was first required to find that defendant had possessed the photographs before it was permitted to consider that evidence in determining defendant's guilt, and further instructing the jury that it "must not convict the Defendant here solely because you think he's guilty of having that child pornography. The evidence must convince you beyond a reasonable doubt that the Defendant committed one or more of the crimes alleged . . . ." A proper limiting instruction may "cushion the prejudicial effect" of admitted evidence. See *People v Crawford*, 458 Mich 376, 380, 385; 582 NW2d 785 (1998)(citation omitted).

For these reasons, we conclude that the trial court did not abuse its discretion by permitting the prosecution to introduce 10 images of the child pornography found on the computer in defendant's home. *Courser*, 326 Mich App at 305; see also *People v Blackston*, 481 Mich 451, 467; 751 NW2d 408 (2008) (noting that a trial court's decision on a close evidentiary question is

generally not an abuse of discretion). We also note that the remaining evidence against defendant was strong; even if the trial court admitted this evidence in error, we are not convinced, in light of the weight of the properly admitted evidence, that the error undermined the reliability of the verdict. See *People v Snyder (After Remand)*, 301 Mich App 99, 111-112; 835 NW2d 608 (2013); MCR 2.613(A).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his trial counsel was ineffective in not objecting to hearsay testimony by the forensic computer examiner regarding statements made by NH, during his interview, concerning the computer that was found in his room and the child pornography images found on it. We disagree. Because no *Ginther*[1] hearing was held, our review of this issue "is limited to errors apparent on the record." *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008); see also *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). To establish ineffective assistance of counsel, a defendant must show that: (1) counsel's representation "fell below an objective standard of reasonableness"; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. Defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

Defendant did not object to the testimony in question; therefore, to the extent that the trial court's admission of the testimony is challenged on appeal, we review that challenge for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain when it is clear or obvious, and that error affects a defendant's substantial rights defendant can show prejudice, i.e., that the error affected the outcome of the proceedings against him. *Id*.

The parties agree that the testimony by the examiner regarding NH's statements was hearsay. MRE 401. The trial court therefore plainly erred by permitting that testimony; nonetheless, we find that error harmless in light of the fact that many of NH's statements (to which the examiner testified) were helpful to defendant's case, and defendant has not shown that the

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

testimony was outcome determinative. See *Carines*, 460 Mich at 763, *Snyder (After Remand)*, 301 Mich App at 111-112. Indeed, defendant does not argue that the reversal is required under the plain-error rule, instead , defendant argues only that his trial counsel was ineffective for failing to object to the examiner's testimony regarding NH's hearsay statements.[2] We conclude that defendant has not established that he is entitled to relief.

The challenged testimony regarding NH's statements provided a number of pieces of information for the jury, much of it to defendant's benefit. First, NH had admitted that the computer was his. Second, the computer was found in NH's bedroom. Third, NH had the computer password-protected (although also that it was not always left "locked" by NH). Fourth, NH told the police that he had not downloaded the images and did not know anything about them. And fifth, NH had never seen defendant use the computer.

Reviewing the testimony regarding NH's statements in its entirety, defendant has not overcome the presumption that counsel's decision not to object was a matter of trial strategy. The trial court had already ruled that the images were admissible under MCL 768.27a. Without any of NH's statements, the prosecution still would have presented evidence that deleted pornographic images were found on a computer in defendant's home. The officer's testimony regarding NH's statements, specifically that NH had admitted that the computer was his and that it was password-protected, coupled with the evidence that no other child pornography images were found on any of the other electronic devices or in any other form, enabled trial counsel to make the argument that NH had downloaded the images without defendant's knowledge. Given these strategic considerations, defendant has failed to rebut the presumption that counsel's decision not to object was objectively reasonable, notwithstanding that the strategy was unsuccessful. *Dixon*, 263 Mich App at 398. For the same reason, defendant cannot show prejudice when many of the statements inured to his benefit and the testimony about the statements as a whole allowed defense counsel to elaborate on his argument that defendant was not the one that downloaded, stored, or viewed the images. *Vaughn*, 491 Mich at 670. Defendant has therefore not shown that his counsel was ineffective.

## IV. JUDICIAL BIAS

Defendant also argues that he was denied his right to a trial conducted by a fair and impartial judge. We disagree. Defendant concedes that he did not preserve this issue with an appropriate objection. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Therefore, we review defendant's claims of judicial bias and partiality for plain error affecting his substantial rights. *People v Shenoskey*, 320 Mich App 80, 82; 903 NW2d 212 (2017); see also *Carines*, 460 Mich at 763.

A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *Jackson*, 292 Mich App at 598. In determining whether a trial judge's comments or conduct deprived a defendant of a fair trial, this Court considers whether the "trial judge's conduct

---

[2] Defendant argues that if trial counsel had objected to the examiner's testimony, the prosecution would have had to elicit testimony at trial directly from NH.

pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. This is a fact-specific inquiry to be considered in the context of a given case. *Id*. at 171-172. It does not depend on whether the evidence supports the conviction or whether the conduct actually contributed to the verdict. *Id*. at 171 n 3. "Rather, in considering improper influence, the reviewing court must determine whether the judge's conduct *was sufficiently severe and clear* so as to create the appearance of bias against the aggrieved party." *Id*. (emphasis added.) We also consider the "cumulative effect" of any errors. *Id*. at 171-172.

In evaluating the totality of the circumstances, we consider a non-exhaustive list of factors, including any inappropriate conduct by the trial court, such as belittling counsel, inappropriate questioning of witnesses, inappropriate commentary, or providing inappropriate advice to either side. *Id*. at 172-173. This Court also consider the tone and demeanor of the trial judge to the extent we are able. *Id*. at 175-176. Further, we consider "the scope of judicial intervention within the context of the length and complexity of the trial," when a more complex issue may make it more appropriate for the judge to intervene to a greater extent, and also whether "the comments or questions were directed at one side more than the other." *Id*. at 176-177. The existence of a curative instruction, such as one informing the jury that the judge's comments or questions are not evidence, or one directed at conduct that could give rise to the appearance of bias "will often ensure a fair trial despite minor or brief inappropriate conduct." *Id*. at 177.

## A. ACTIONS TOWARD DEFENSE COUNSEL

Defendant argues that the trial court exhibited bias and partiality when it twice "rebuked" defense counsel during trial and did not allow counsel to properly cross-examine the victims' mother. We disagree with defendant's characterization of the trial court's conduct. Before the jury was dismissed for lunch on the second day of trial, the trial court remarked that it was "hoping and directing" that defense counsel would conclude cross-examination in about half an hour after the jury returned. The court also stated that it "want[ed] to give [defense counsel] a chance to gather his notes, put his material together so we can conclude the cross-examination." Defendant argues that these remarks show that the court limited counsel's cross-examination of a key witness and implied that counsel was not prepared.

The record does not support defendant's claim that the court's remarks showed bias against defendant or pierced the veil of impartiality. "The scope and duration of cross-examination is in the trial court's sound discretion." *Wischmeyer v Schanz*, 449 Mich 469, 474; 536 NW2d 760, 763 (1995). Trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination because of concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v Van Arsdall*, 475 US 673, 679; 106 S Ct 1431; 89 L Ed 2d 674 (1986). Overall, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id*. (quotation marks and citation omitted).

Defense counsel had already conducted extensive cross-examination of the victims' mother by the time the trial court halted the proceedings for lunch. When discussing its plans with the jury, the trial court clearly expressed that it wished to avoid repetitive questioning while ensuring that defendant had a chance to cover everything that might help the defense. The court's stated request or hope that defense counsel would finish his cross-examination within a certain time period did not prevent defense counsel from conducting an effective cross-examination. With respect to defendant's claim that the court implied that counsel was not prepared, viewing the court's remarks in context, it is apparent that the trial court merely asked counsel to go over his notes to see what he wanted to focus on when cross-examination continued. There is no reasonable likelihood that the trial court's remarks created an appearance of advocacy or partiality for or against a party. *Stevens*, 498 Mich at 171 & n 3.

Defendant also argues that the trial court showed favoritism when it "rebuked" defense counsel during his closing argument. We again disagree. The record shows that the attorneys for both parties made statements during the closing arguments regarding why the prosecution did not cross-examine defendant, prompting the trial court to make the following statement:

> See we're not going to get into an argument between the attorneys about how they view the case. These folks have a role to play, both of them, have a professional obligation, but that doesn't extend to offering you their opinions about the witnesses or even their opinion about the other attorney. That isn't helpful.

This remark cannot reasonably be viewed as showing bias against defendant and was clearly directed at both attorneys. *Stevens*, 498 Mich at 171.

## B. LEADING QUESTIONS

Defendant also argues that the trial court was biased against the defense because it allowed the prosecutor to ask leading questions of AH. We disagree. "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." MRE 611(d)(1). Whether to allow leading questions is within the trial court's discretion. *In re Susser Estate*, 254 Mich App 232, 239; 657 NW2d 147 (2002). Indeed, MCL 768.24 provides that "[w]ithin the discretion of the court no question asked of a witness shall be deemed objectionable solely because it is leading." In this case, the questioning involved AH, a child witness. As this Court has observed, "a considerable amount of leeway may be given to a prosecutor to ask leading questions of child witnesses." *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). Moreover, "to demonstrate that reversal is warranted for the prosecution asking leading questions, it is necessary to show some prejudice or patterns of eliciting inadmissible testimony." *People v Johnson*, 315 Mich App 163, 200; 889 NW2d 513 (2016).

AH was 12 years old at the time of trial. Before the challenged questioning, she had already testified about the acts of oral sex and other acts by defendant. The substance of the testimony elicited by the prosecutor was admissible. The trial court's decision to allow leading questions despite defense counsel's objection does not demonstrate that it was biased against defendant. Adverse rulings do not establish actual bias unless they "display a deep-seated antagonism [by the judge] that would make fair judgment impossible." *Cain v Dep't of Corrections*, 451 Mich. 470, 496, 548 NW2d 210 (1996), quoting *Liteky v United States*, 510 US 540, 555; 114 S Ct 1147; 127

-8-

L Ed 2d 474 (1994). Nothing in the trial court's discretionary decisions to allow some leading questions of a child witness demonstrates that the court was biased against defendant.

## C. MITIGATING INSTRUCTIONS

At the end of trial, the trial court specifically instructed the jury that its comments, rulings, summary of the evidence, and instructions were not evidence. The court further stated:

> The more inconspicuous I can be in a trial the happier I am, I've been a little more engaged in this trial than I normally am, but none of that's evidence, none of that indicates any opinion as to how I think this case should be decided. If I've done anything that's left with you a conclusion that I have an opinion one way or another how this case turned out, you're asked to disregard your view in that regard because you're the ones who are the only judges of the facts and therefore the only ones with the power and duty to decide the outcome of this case.

This instruction further mitigates against any finding that the trial court denied defendant a fair trial by piercing the veil of judicial impartiality. *Stevens*, 498 Mich at 177. Accordingly, defendant has not established his claim of judicial bias. For that reason, defendant also cannot establish that his counsel was ineffective for failing to raise an objection during trial based on judicial bias. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## V. VOIR DIRE

Finally, defendant argues that he was denied a fair trial because the trial court failed to ask specific voir dire questions that defendant had requested, and did not sufficiently explore possible juror bias. We disagree.

Before trial, the trial court informed the parties that it would conduct voir dire itself. However, the court invited the parties to submit proposed questions for the jury and it also informed the parties that they could ask to approach the bench if they wanted to request any follow-up questions. Defendant submitted proposed questions, but the record does not indicate that he requested any follow-up questioning of the jurors or otherwise objected to the scope of the trial court's voir dire. Accordingly, this issue is unpreserved, *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), and we review the issue for plain error affecting defendant's substantial rights, *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012); see also *Carines*, 460 Mich at 763.

In *People v Sawyer*, 215 Mich App 183, 187; 545 NW2d 6 (1996), this Court explained:

> A defendant who chooses to be tried by a jury has a right to a fair and impartial trial. The function of voir dire is to elicit sufficient information from prospective jurors to enable the trial court and counsel to determine who should be disqualified from service on the basis of an inability to render decisions impartially. In ensuring that voir dire effectively serves this function, the trial court has considerable discretion in both the scope and conduct of voir dire. What constitutes

acceptable and unacceptable voir dire practice does not lend itself to hard and fast rules. Rather, trial courts must be allowed wide discretion in the *manner* they employ to achieve the goal of an impartial jury.

> In reviewing the trial court's conduct, this Court must determine whether the trial court conducted a voir dire sufficiently probing to uncover potential juror bias. [Quotations and citations omitted.]

"Nor is there a right to have the court ask questions submitted by counsel." *Id*. at 191.

In this case, defendant argues that the trial court erred when it did not ask the specific questions he submitted. These questions sought to explore the issue of juror bias in cases involving allegations of criminal sexual conduct against children. Although the trial court may not have asked the specific questions submitted by defense counsel, it had no obligation to do so, *id*., and the record in any event discloses that the court explored the very subject raised by defendant by asking voir dire questions such as the following:

> Is there anybody here who is providing services or counseling to abused children, whether sexually or otherwise abused? Is there anyone here who would have any reservations about following the law as it is concerning a case such as this? Is there anyone here who has had a close friend or a family member sexually abused as a child?

The trial court's questioning led to the dismissal of several jurors who had experiences with sexual abuse, or who had friends or relatives who had been abused. The trial court also asked the prospective jurors whether, "for any reason I haven't touched on in my earlier questions think it would be difficult for you to be fair and impartial and give both sides a fair shake and base your verdict on the evidence and the law?" The trial court's questions were reasonably designed to elicit possible personal bias because of the nature and subject matter of the case, and did in fact reveal actual or potential bias by several prospective jurors who were then dismissed. Trial counsel had the opportunity to request more specific follow-up questions, but did not do so. Defendant has not shown that the trial court's questioning was inadequate to allow the court and the parties to determine potential bias due to the nature and subject matter of the case, and has not shown plain error. *King*, 297 Mich App at 472.

Defendant also argues that following comments by the trial court when discussing jury duty generally were inappropriate:

> With regard to this questioning process, there is a — a two-sided coin. First, the last thing some people want to do is be stuck on jury . . . some people will . . . come into court and they will make up reasons they can't be a juror. They will quite simply — and I don't mean to be harsh — they will lie to me, but they'll be excused. They'll walk out the door, none of the officers will be there to stop them and nobody will go to their house, nobody will swear out a warrant for them, they'll . . .be fine, they'll be off jury duty. And all they had to do to accomplish that is trade in their integrity for a few days out of jury duty and some people are willing to do that. Now there's . . . the jury board, and that's why you're here and

-10-

they sent a notice to you to come in for jury duty. Fifty years ago, in 1968, there was a different board, a draft board, sent notice out to people in Clinton County that they . . . were being drafted, and they weren't being asked. And most of the people who were drafted went, and in 1968 a lot of them were sent to Southeast Asia and most of them came back, but not all of them. So if you . . . walk down to Veteran's Memorial you'll see carved on stone the names of those who didn't come back. And many of them who did come back were never the same . . . . That's what we in Clinton County . . . ask of our citizens and that's what we got. Now you're asked to come in, sit in these leather chairs, air conditioning is on, nobody is going to hurt you, and listen to evidence for six days. Not a bad deal really. Now some of you might have done both . . . but it's important to keep that in mind but the coin has another side. We have people who want out of jury duty even at the expense of their integrity. We also have people who won't admit they may have a bias, they may have a prejudice. There is something in their family history, something that's happened that would make it impossible for them to give both sides in the case such as this a fair shake, and we understand that and if that's the case you let me know when I ask, and you'll be excused. And if that happens the prosecutor will be grateful, defense counsel will be grateful, the Court and the community will be grateful for your honesty, and I won't try and embarrass anybody by going into great details because I'll trust you, I'll trust you to tell me the truth.

Defendant argues that these remarks "inevitably left jurors with the impression that the court would have little tolerance for anyone who tried to be excused from jury duty without a clear and articulable reason" and "created an environment that discouraged jurors from openly sharing about biases that they held that were not a direct result of personal or professional experience." We disagree. The thrust of the trial court's comments was that serving on a jury is part of a citizen's duty, and that potential jurors should not be dishonest to get out of jury duty. At the same time, the court acknowledged that the personal circumstances of each prospective juror were different and that some jurors may indeed have biases or prejudices. However, the court did not discourage jurors from revealing any biases or prejudices. On the contrary, it encouraged them to do so, and it attempted to allay any concerns jurors might have about revealing potentially embarrassing information by assuring them that it would not question them about the underlying reasons in great detail. We find no error in this statement. *Id.*

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford

-11-