WILKINS v GAGLIARDI

Docket No. 174456. Submitted August 7, 1996, at Lansing. Decided October 8, 1996, at 9:00 A.M.

Lawrence F. Wilkins and Theresa A. Wilkins, for herself and as next friend of Paul R. Wilkins, brought an action in the Ingham Circuit Court against Patrick M. Gagliardi, individually and as chairman of the Oversight Committee of the Michigan House of Representatives, and others, alleging in part that Gagliardi intentionally violated the Open Meetings Act (OMA), MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, by refusing to permit the plaintiffs to videotape a committee meeting at which Theresa Wilkins testified and the committee adopted two resolutions. The plaintiffs sought damages, costs, attorney fees, a declaration invalidating the adopted resolutions, and an injunction against further violations of the OMA. The parties exchanged unaccepted offers of judgment. Following a bench trial, the court, Carolyn Stell, J., found that Gagliardi had intentionally violated the OMA, imposed a $100 fine on Gagliardi, and awarded minimal costs to the plaintiffs after refusing to award them actual costs and attorney fees. Gagliardi appealed, and the plaintiffs cross appealed.

The Court of Appeals *held*:

1. Whether the OMA applies to Gagliardi, in view of the protections accorded to him as a legislator by the Speech or Debate Clause, Const 1963, art 4, § 11, and by MCL 4.551; MSA 2.55(1), does not present a political question that, under the separation of powers doctrine, the judiciary cannot address. Instead, the question is justiciable because it involves interpretation of the constitution and the interplay between the constitutional provision and the OMA.

2. Under the Speech or Debate Clause, state legislators enjoy broad-based immunity from civil arrest and civil process for the enactment of legislation and for other acts committed within the sphere of legislative activity. Because Gagliardi was acting as committee chairman and was conducting legislative business when he prevented the plaintiffs from videotaping the committee meeting, he enjoys immunity under the Speech or Debate Clause from the plaintiffs' action.

3. A waiver of the protections of the Speech or Debate Clause must be explicit and unequivocal. The Legislature, in enacting the OMA without an explicit and unequivocal waiver of the protections of the Speech or Debate Clause, did not waive such protections.

4. MCL 4.551; MSA 2.55(1) is a codification of the protections afforded by the Speech or Debate Clause.

5. Gagliardi made a timely offer of judgment for a sum certain by making an offer of $500 plus costs at least twenty-eight days before trial. The case must be remanded for a determination whether attorney fees may be awarded pursuant to the offers of judgment court rule, MCR 2.405.

6. The trial court did not abuse its discretion by refusing to invalidate the resolutions adopted by the committee in the absence of any impairment of the rights of the public resulting from the violation of the OMA.

7. The trial court did not abuse its discretion by refusing to enjoin further violations of the OMA inasmuch as there was no real and imminent danger of irreparable injury after the House of Representatives adopted rules to ensure compliance with the OMA.

8. The plaintiffs' cross appeal regarding costs and attorney fees need not be addressed in light of the disposition in favor of Gagliardi. The trial court's refusal to award the plaintiffs attorney fees is affirmed and the award of costs to the plaintiffs is reversed.

Affirmed in part, reversed in part, and remanded.

1. CONSTITUTIONAL LAW — SEPARATION OF POWERS — POLITICAL QUESTIONS.

The political question doctrine involves three inquiries: Does the issue involve resolution of questions committed by the text of the constitution to a coordinate branch of government? Would resolution of the question demand that a court move beyond areas of judicial expertise? Do prudential considerations for maintaining respect among the three branches of government counsel against judicial intervention? (Const 1963, art 3, § 2).

2. CONSTITUTIONAL LAW — LEGISLATORS — SPEECH OR DEBATE CLAUSE — OPEN MEETINGS ACT.

The broad-based immunity from civil arrest and civil process enjoyed by legislators while engaged in legislative activity shields legislators from liability for actions that otherwise would constitute violations of the Open Meetings Act (Const 1963, art 4, § 11; MCL 15.261 *et seq.*; MSA 4.1800[1] *et seq.*).

3. PRETRIAL PROCEDURE — OFFERS OF JUDGMENT.

An offer of judgment must be made at least twenty-eight days before trial; trial begins when the court actually starts hearing the case,

i.e., receiving evidence, as by accepting the parties' stipulation (MCR 2.405).

4. STATUTES — OPEN MEETINGS ACT — IMPAIRMENT OF RIGHTS OF PUBLIC.

A party seeking to have a decision of a public body invalidated because of a violation of the Open Meetings Act must allege both a violation of the act and that the violation impaired the rights of the public (MCL 15.261 *et seq.*; MSA 4.1800[11] *et seq.*).

5. INJUNCTIONS — DISCRETIONARY RELIEF — REQUIREMENTS.

The granting of injunctive relief is within the sound discretion of the trial court and must be based on the facts of the particular case; injunctive relief should be granted only when justice requires it, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable harm.

*David R. Melton*, for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Paul F. Novak*, Assistant Attorney General, for the defendant.

Before: MICHAEL J. KELLY, P.J., and HOEKSTRA and E. A. QUINNELL,* JJ.

PER CURIAM. Plaintiffs brought this action to enforce their rights under the Open Meetings Act (OMA), MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.* After a bench trial, the trial court entered a judgment in favor of plaintiffs and imposed a penalty and costs against Patrick M. Gagliardi (hereafter defendant). Defendant appeals that judgment as of right. Plaintiffs cross appeal the trial court's refusal to require defendant to pay them their actual costs and attorney fees. We affirm in part and reverse in part.

On November 5, 1991, plaintiffs sought permission to videotape a session of the House Oversight Committee, of which defendant was the chairman. On that

---

* Circuit judge, sitting on the Court of Appeals by assignment.

day, the committee was considering two advisory resolutions. Defendant denied them permission to videotape the proceedings because they had failed to seek advance permission. Defendant ordered the sergeant-at-arms to remove the camcorder, but indicated that plaintiffs could stay. Plaintiffs left the room for a time, were interviewed by the press, and returned to the room. After their return to the room, plaintiff Theresa Wilkins gave testimony at the hearing. The meeting was open to the public. The 1993 Journal of the House set forth rules that incorporated the OMA's definition of "attend," which includes the right to videotape the proceedings.

In their amended complaint, plaintiffs alleged an intentional violation of the OMA by defendant, challenged the validity of the committee's actions regarding HR 435 and HCR 365, alleged an intentional violation of the OMA by the sergeants-at-arms, sought a declaration that the actions of the defendants were unlawful, and sought an injunction against any further violation of the OMA. On November 17, 1992, the day scheduled for the beginning of trial, the trial court heard defendants' motion for summary disposition and granted summary disposition with regard to the allegations against the sergeants-at-arms. The order dismissing the sergeants-at-arms is not at issue in this appeal. At least twenty-eight days before February 23, 1993, defendants filed an offer of judgment for $500 plus costs attributable to those portions of plaintiffs' complaint that were not dismissed. Plaintiffs responded with an offer of judgment of their own.

On February 23, 1993, the trial court accepted the parties' stipulation of facts, read them into the record, and heard witnesses for plaintiffs. On July 12, 1993,

the trial court heard arguments regarding defendants' motion for involuntary dismissal and, on July 16, 1993, issued a written opinion dismissing all allegations except those stating that defendant had intentionally violated the OMA. When trial resumed on July 19, 1993, defendant chose not to present any witnesses, and closing arguments were made. The trial court found that defendant had intentionally violated the OMA when he interfered with plaintiffs' right under the OMA to videotape the committee meeting. It further found that, because the violation was intentional, it could impose a maximum penalty against defendant pursuant to MCL 15.273; MSA 4.1800(23) of up to $500 plus costs and actual attorney fees. Although it found that substantial compliance was not a defense to this violation of the OMA, it stated that it would consider such compliance in determining the appropriate fine to be imposed. In imposing a fine of $100, the trial court considered that plaintiffs could have stayed at the meeting, that the committee did not attempt to conduct a secret meeting, and that the House of Representatives, learning from this incident, had adopted rules that complied with the OMA. The trial court further reasoned that, because defendant admitted that he failed to allow the videotaping and stipulated the facts, the costs of trial were unnecessary for the paragraphs under which plaintiffs prevailed. After a hearing with regard to the costs, the trial court denied the majority of the costs and awarded additional costs of only $20.

Defendant argues that the trial court erred in finding that this case presented a justiciable question. He further argues that the trial court erred in finding that his protections under the Speech or Debate Clause

were waived with the passage of the OMA. We affirm the trial court's finding of justiciability, but reverse its finding that the OMA could be constitutionally applied to defendant.

The object of appellate review of a constitutional provision is to give effect to the intent of the people who adopted the constitution. *Livingston Co v Dep't of Management & Budget*, 430 Mich 635, 641-642; 425 NW2d 65 (1988); *Macomb Co Taxpayers Ass'n v L'Anse Creuse Public Schools*, 213 Mich App 71, 78; 540 NW2d 684 (1995). In discerning such intent, we may look at the circumstances surrounding the adoption of the provision and the purpose sought to be accomplished by its enactment. *Traverse City School Dist v Attorney General*, 384 Mich 390, 405; 185 NW2d 9 (1971). However, the primary source of understanding the constitution is its plain meaning as understood by the people who voted for it. *Livingston Co, supra.* Constitutional language is to be read according to its natural, common, and most obvious meaning. *Macomb Co, supra.*

Defendant argues that the instant case presents a political question that the separation of powers doctrine commits to the legislative branch. We disagree. The separation of powers doctrine is explicitly established in Const 1963, art 3, § 2. As with the political question doctrine, the separation of powers doctrine prevents the judiciary from usurping legislative prerogative. *Schwartz v City of Flint*, 426 Mich 295, 310-314; 395 NW2d 678 (1986). Analysis of an issue under the political question doctrine, requires a three-part inquiry:

> "(i) Does the issue involve resolution of questions committed by the text of the Constitution to a coördinate

branch of Government? (ii) Would resolution of the question demand that a court move beyond areas of judicial expertise? (iii) Do prudential considerations [for maintaining respect between the three branches] counsel against judicial intervention?" [*House Speaker v Governor*, 443 Mich 560, 574; 506 NW2d 190 (1993), quoting *Goldwater v Carter*, 444 US 996, 998; 100 S Ct 533; 62 L Ed 2d 428 (1979) (Powell, J., concurring), which cited *Baker v Carr*, 369 US 186, 217; 82 S Ct 691; 7 L Ed 2d 663 (1962).]

Determining whether constitutional authority has been exceeded or determining what authority has been committed to a particular branch of government is the responsibility of the courts. *Baker*, 369 US 211; *House Speaker*, 443 Mich 575.

"A conflict between the constitution and the statute is clearly a legal question which only a court can decide." *Univ of Michigan Regents v Employment Relations Comm*, 389 Mich 96, 103; 204 NW2d 218 (1973). In that same vein, the Court in *Baker* stated that deciding

whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution. [369 US 211.]

See *Dep't of Commerce v Montana*, 503 US 442, 458-459; 112 S Ct 1415; 118 L Ed 2d 87 (1992); *House Speaker*, 443 Mich 575. The political question doctrine "is designed to restrain the Judiciary from *inappropriate* interference in the business of the other branches of Government." *United States v Munoz-Flores*, 495 US 385, 394; 110 S Ct 1964; 109 L Ed 2d

384 (1990) (emphasis supplied). Interpretation of the constitution is an exclusive function of the judicial branch. *House Speaker*, 443 Mich 575; *Richardson v Secretary of State*, 381 Mich 304, 309; 160 NW2d 883 (1968).

Defendant argues that, because Const 1963, art 4, § 16 provides that each house of the Legislature "shall . . . determine the rules of its proceedings," the determination whether he may be held liable under the OMA is a nonjusticiable issue. This argument is not supported by the above case law. Instead, the court below and this Court are called upon first to construe the OMA and its applicability to the Legislature in light of the commands of the constitution. Such a task is a clear judicial responsibility. Unlike the situation in *Abood v League of Women Voters of Alaska*, 743 P2d 333 (Alas, 1987), cited by defendant, this Court is not called upon to enforce or interpret the House Rules. The court in *Abood* did find that application of the Alaska Open Meetings Law was a nonjusticiable question. However, it was also asked to enforce a specific rule of the Alaska Legislature. The two issues were intertwined. In the instant case, plaintiffs did not seek to enforce or interpret any legislatively determined rules of the House. The trial court's finding of justiciability is affirmed.

Defendant next claims immunity under Const 1963, art 4, § 11, which reads:

> Except as provided by law, senators and representatives shall be privileged from civil arrest and civil process during sessions of the legislature and for five days next before the commencement and after the termination thereof. They shall not be questioned in any other place for any speech in either house.

Under this section, state legislators enjoy a broad-based immunity for the enactment of legislation and for other acts committed within the sphere of legislative activity. *77th Dist Judge v Michigan*, 175 Mich App 681, 697; 438 NW2d 333 (1989). The Speech or Debate Clause of the Michigan Constitution is substantially similar to that of the United States Constitution and should be read broadly to effectuate its purpose. *Prelesnik v Esquina*, 132 Mich App 341, 347; 347 NW2d 226 (1984). "[O]ne of the purposes of the clause is to protect [legislators] from the distractions and the loss of time, energy, and attention from their legislative task which would result if they were required to defend litigation." *Id.*, citing *Eastland v United States Servicemen's Fund*, 421 US 491, 503; 95 S Ct 1813; 44 L Ed 2d 324 (1975). In order for the conduct to be protected under the Speech or Debate Clause, it must fall within the legislative sphere. *Prelesnik, supra.*

In *Gravel v United States*, 408 US 606, 625; 92 S Ct 2614; 33 L Ed 2d 583 (1972), the Court described the scope of legislative acts that are protected under the Speech or Debate Clause:

> Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. As the Court of Appeals put it, the courts have extended the privilege to matters beyond pure speech or debate in either House, but "only when necessary to prevent indirect impairment of such delibera-

tions." *United States v Doe*, 455 F2d [753], at 760 [CA 1, 1972].

The Court found that a legislator's conduct at committee hearings, although subject to judicial review in certain circumstances, could not be the basis of a civil judgment against the legislator. *Gravel*, 408 US 624. In order to find "that a committee's investigation has exceeded the bounds of legislative power it must be obvious that there was a usurpation of functions exclusively vested in the Judiciary or the Executive." *Tenny v Brandhove*, 341 US 367, 378; 71 S Ct 783; 95 L Ed 1019 (1951).

The Court further found that the Speech or Debate Clause was not limited solely to speech, but also applied to things that are generally done by legislators during the conduct of their legislative business. *Gravel*, 408 US 617-618. The Speech or Debate Clause has been applied to the act of voting, to committee reports and resolutions, to the authorizing of an investigation, and to the issuing of a subpoena. *Eastland*, 421 US 504-507; *Powell v McCormack*, 395 US 486, 502; 89 S Ct 1944; 23 L Ed 2d 491 (1969).

Under the above case law, defendant's acts as chairman of the committee certainly fall within the scope of legislative activity. When defendant had plaintiffs' camcorder removed, he was acting as the chairman of the committee as it was conducting legislative business and was, therefore, immune. Plaintiffs argue that defendant waived the defense of immunity because he did not plead it as an affirmative defense pursuant to MCR 2.116(D). We disagree. Defendant adequately raised the issue in his affirmative defense that stated: "The relief sought by Plaintiffs has no legal or constitutional basis." In addition, as will be

discussed below, constitutional immunity cannot be waived by inference, but must be waived explicitly.

Defendant argues that the trial court erred in finding that the Legislature waived defendant's immunity under the Speech or Debate Clause through the passage of the OMA. We agree. In *United States v Helstoski*, 442 US 477, 491; 99 S Ct 2432; 61 L Ed 2d 12 (1979), the Court held: "[W]aiver [of the protection of the Speech or Debate Clause] can be found only after explicit and unequivocal renunciation of the protection. The ordinary rules for determining the appropriate standard of waiver do not apply in this setting." The Court reasoned that

> [t]he Speech or Debate Clause was designed neither to assure fair trials nor to avoid coercion. Rather, its purpose was to preserve the constitutional structure of separate, coequal, and independent branches of government. The English and American history of the privilege suggests that any lesser standard would risk intrusion by the executive and the judiciary into the sphere of protected legislative activities. [*Id.*]

While not expressly deciding whether there had been an institutional waiver by Congress of the protections of the Speech or Debate Clause by passage of 18 USC 201, the Court noted that the history of the Speech or Debate Clause supported an argument that Congress, as a body, should not be free to strip individual congressmen of the protection guaranteed by that clause. *Helstoski*, 442 US 492-493. The Court concluded that, assuming there could be an institutional waiver of the clause, "such waiver could be shown only by an explicit and unequivocal expression." *Id.*, 493.

Nowhere in the OMA is there a provision that expressly and unequivocally waives the Speech or

Debate Clause protection for legislators. Although MCL 15.273(1); MSA 4.1800(23)(1) provides for personal liability of a "public official" who intentionally violates the OMA, it does not define the term "public official." As such, it cannot be seen as an express and unequivocal waiver of the protections of the Speech or Debate Clause. Further, even though MCL 15.262(a); MSA 4.1800(12)(a) defines "public body" in part as a "state . . . legislative . . . committee," it does not expressly or unequivocally waive the immunity of individual legislators under the Speech or Debate Clause.

Plaintiffs further argue that the amendment of article 4, § 11 that added the words "except as provided by law," gave the Legislature the power to waive the immunity granted under the Speech or Debate Clause. A clear reading of the constitutional provision does not support their argument. The quoted language refers only to the civil arrest and service of process portions of that section. The Speech or Debate Clause, being a totally separate provision in that section of the constitution, was not affected by the change.

In addition to his constitutional argument, defendant claims that the immunity of the Speech or Debate Clause was codified in MCL 4.551; MSA 2.55(1).[1] We agree. The primary obligation in statutory construction is to determine and give effect to the intent of the Legislature. *People v Burwick*, 450 Mich 281, 287; 537 NW2d 813 (1995); *Drouillard v Stroh Brewery Co*, 449 Mich 293, 302; 536 NW2d 530 (1995). In interpreting statutes, undefined words should be accorded

---

[1] This statute reads: "A member of the legislature of this state shall not be liable in a civil action for any act done by him or her pursuant to his or her duty as a legislator."

their common and approved usage. *People v Fields*, 448 Mich 58, 67; 528 NW2d 176 (1995). If the language of the statute is unambiguous, judicial construction is not required or permitted, and the courts must apply the statute as written. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). If the language in the statute is not clear, courts must construe the language and must accord statutory words their ordinary and generally accepted meaning. *Id.*

MCL 4.551; MSA 2.55(1) is clearly a codification of the constitutional protections afforded under the Speech or Debate Clause. This statute became effective on March 12, 1984. Because it was enacted after the amendment of Const 1963, art 4, § 11, it can be considered legislation that had the purpose of implementing the amendment of the constitution. See OAG, 1983-1984, No 6142, p 100 (April 6, 1983). The purpose statement of the Legislative Immunity Act, of which this statute is a part, further supports this interpretation of the statute.[2]

Plaintiffs argue that, because the OMA was amended in 1986 and 1988, it should govern over MCL 4.551; MSA 2.55(1), because the OMA is the more recent and more specific enactment. We disagree. Although sections of the OMA were amended in 1986 and 1988, MCL 15.273(1); MSA 4.1800(23)(1), setting forth the personal liability of a "public official," and MCL

---

[2] The statement reads:

AN ACT to provide immunity from civil action to members of the legislature of this state for acts done pursuant to duty as legislators; to prohibit members of the legislature of this state from being made parties to contested cases or other administrative proceedings for acts done pursuant to duty as legislators; and to provide for certain exemptions from subpoenas.

15.262(a); MSA 4.1800(12)(a), defining "public body," were not amended. Therefore, MCL 4.551; MSA 2.55(1) is the more recent and specific statute concerning the liabilities of a member of the Legislature with regard to an act done in the legislative sphere and it very specifically states that a member of the Legislature shall not be liable in a civil action for acts done in his duty as a legislator. The trial court's finding of personal liability against defendant is reversed.

Defendant next argues that the trial court erred in finding that his offer of judgment pursuant to MCR 2.405(B) was untimely. We agree. The trial court's finding that trial began for purposes of MCR 2.405(B) on November 17, 1992, is reversed.

The determination of when trial begins for purposes of the offer of judgment rule is a case of first impression in Michigan. MCR 2.405(B) requires that an offer of judgment be served on an adverse party at least twenty-eight days before trial. The purpose of this rule is to encourage settlement and avoid protracted litigation. *Hamilton v Becker Orthopedic Appliance Co*, 214 Mich App 593, 596; 543 NW2d 60 (1995). The federal courts have found that trial begins when the trial court actually begins hearing the case. *Greenwood v Stevenson*, 88 FRD 225 (D, RI, 1980). In *United States v Gill*, 623 F2d 540, 542 (CA 8, 1980), the court found that trial began when the trial court "approved defendant's waiver of jury trial, received the written stipulations and took the case under submission."

In the instant case, no evidence was submitted on November 17, 1992, and no trial proceedings occurred. Instead, the only action taken by the trial court was to hear summary disposition motions.

Using the above federal case law and considering the purpose behind the offer of judgment rule, we find that trial did not begin until February 23, 1993, when the trial court accepted the stipulation of facts and began hearing opening arguments and evidence. The purpose of MCR 2.405 of encouraging settlement is furthered by finding that trial does not begin for purpose of that court rule until the trial court hears opening arguments and receives stipulations of facts or hears testimony. The matter is remanded to the trial court for a determination of costs to be awarded.

Plaintiffs argue that the trial court was exercising its discretion when it refused to award attorney fees under MCR 2.405 in the "interest of justice." A trial court may refuse to award fees under MCR 2.405 in the "interest of justice." *Hamilton, supra; Butzer v Camelot Hall Convalescent Centre, Inc (After Remand)*, 201 Mich App 275, 278; 505 NW2d 862 (1993). However, the trial court in this case clearly denied the fees on a finding that the offer of judgment was untimely. On remand, the trial court may, in its discretion, decide whether an award of attorney fees is appropriate in this case.

Plaintiffs argue that the offer of judgment should not be a basis for an award of attorney fees because it was not for a "sum certain" as required under MCR 2.405(A)(1). We disagree. The offer was for a sum certain when it stated that it was for $500 plus costs attributable to those portions of plaintiffs' complaint that were not dismissed. The decision of the trial court is reversed and the matter is remanded for consideration of the appropriate fees to be awarded pursuant to MCR 2.405.

Plaintiffs argue that the trial court erred in failing to enter a declaratory judgment regarding every paragraph in counts I, II, and IV of their complaint. We disagree. The trial court did not err in addressing each major issue in the case rather than making a paragraph-by-paragraph declaration.

Plaintiffs argue that the trial court abused its discretion in refusing to invalidate the resolutions that were acted upon at the meeting during which the OMA was violated. We disagree. A party seeking an invalidation of a decision by a public body must allege both a violation of the act and that this violation impaired the rights of the public. *Esperance v Chesterfield Twp*, 89 Mich App 456, 464; 280 NW2d 559 (1979). The mere recital of the language that the rights of the public were impaired is insufficient to support a request for invalidation. *Cape v Howell Bd of Ed*, 145 Mich App 459, 467; 378 NW2d 506 (1985). The plaintiff must present factual allegations to support the conclusion that the rights of the public were impaired. *Id.* The trial court correctly found that the rights of the public were not impaired by the technical violation of refusing plaintiffs the right to videotape the meeting. The violation of the OMA in this case, while intentional, was extremely minor. It was so minor that even the impairment of plaintiffs' rights was slight, given that Theresa Wilkins later participated in the meeting. The trial court's refusal to invalidate the committee's actions is affirmed.

Plaintiffs argue that the trial court abused its discretion in refusing to enter injunctive relief for violation of the OMA and further argue that a violation of the OMA, by itself, should be found to constitute a real and imminent danger of irreparable injury sufficient

to support an injunction. We disagree. The granting of injunctive relief is within the sound discretion of the trial court and must be based on the facts of the particular case. *Soergel v Preston*, 141 Mich App 585, 590; 367 NW2d 366 (1985). Injunctive relief should be granted only when justice requires it, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable harm. *ETT Ambulance Service Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 400; 516 NW2d 498 (1994).

In the case at bar, the trial court found an injunction unnecessary because the new House Rules addressed the open meetings problem, there had been no similar incidents in the twenty months between the incident complained of and the time of the court's opinion and the membership of the committee had substantially changed. It, therefore, concluded that there was no real and imminent danger of irreparable injury. We agree. The House has imposed upon itself rules that mirror the OMA and has acted in accordance with those rules. In those circumstances, it is appropriate to refrain from imposing a permanent injunction. *Ridenour v Dearborn School Dist Bd of Ed*, 111 Mich App 798, 806; 314 NW2d 760 (1981).

Plaintiffs argue that the trial court erred in using the "substantial compliance" defense as an additional ground to support its refusal to invalidate the committee's actions. We decline to review this issue because, as discussed above, the trial court relied on the appropriate law in refusing to invalidate the resolutions. Therefore, it is unnecessary to review whether "substantial compliance" is also available as a defense in these circumstances.

Finally, plaintiffs argue that the trial court erred in its award of attorney fees and costs. In light of the above determinations, it is unnecessary to address plaintiffs' arguments in this regard. Because defendant, as a legislator, cannot be held personally liable for his actions as chairman of the committee, the trial court's refusal to award attorney fees is affirmed and the award of costs is reversed.

Affirmed in part, reversed in part, and remanded. Jurisdiction is not retained.