*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HARLAN VERMILYA and LAURA ANN
ANKLAM, as Trustee of the ARTHUR A. AND
ANN E. ANKLAM LIVING TRUST,

        Plaintiffs-Appellants,

v

DELTA COLLEGE BOARD OF TRUSTEES,

        Defendant-Appellee.

UNPUBLISHED
April 28, 2022

No. 356199
Saginaw Circuit Court
LC No. 16-028824-CZ

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendant, Delta College Board of Trustees, pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) with respect to plaintiffs' request for injunctive relief under the Open Meetings Act ("OMA"), MCL 15.261 *et seq.*, following a prior appeal. We affirm.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiffs originally filed this action on January 29, 2016, alleging that defendant violated the OMA by holding a closed session at a public meeting on January 12, 2016, for the purpose of discussing pending litigation, but without disclosing the name of the case it planned to discuss in the closed session. In a prior appeal, this Court affirmed the trial court's order granting plaintiffs summary disposition on their claim that defendant violated the OMA by going into closed session without disclosing the name of the case to be discussed. *Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 424; 925 NW2d 897 (2018) (*Vermilya I*). This Court observed that MCL 15.268(e) permits a public body to meet in closed session "[t]o consult with its attorney regarding trial or settlement strategy in connection with *specific* pending litigation, but only if an open meeting would have a detrimental financial effect on the litigating or settlement position of the public body." *Id.* at 420 (quotation marks omitted; emphasis added). This Court construed the word "specific" to mean that the Legislature intended "for the public body to disclose the particular case or cases it would be discussing." *Id.* at 421-422. This Court reasoned:

Defendant argues, and we agree, that MCL 15.268(e) does not in and of itself require the public body to name the pending litigation it will be discussing in closed session. But statutory language cannot be read in isolation and must be construed in a way that harmonizes the entire act. . . . Indeed, plaintiffs argued, and the trial court agreed, that defendant violated MCL 15.267(1) and MCL 15.269(1), not MCL 15.268(e), when it failed to identify the "specific pending litigation" it would be discussing. When examining MCL 15.267(1), MCL 15.268(e), and MCL 15.269(1) together, it is clear that the Legislature intended for public bodies to name the pending litigation before entering a closed session. [*Id*. at 421.]

*Vermilya I* appears to be the first published case to hold that the OMA requires a public body to disclose the specific names of cases to be discussed in closed session. However, while the appeal in *Vermilya I* was pending, this Court reached this same conclusion in two unpublished decisions involving defendant, *Andrich v Delta College Bd of Trustees*, unpublished per curiam opinion of the Court of Appeals, issued June 5, 2018 (Docket No. 337711), and *Estate of Ader v Delta College Bd of Trustees*, unpublished per curiam opinion of the Court of Appeals, issued June 5, 2018 (Docket No. 337157). While all of these appeals were pending, defendant, on the advice of counsel, changed its policy and began disclosing on the public record the names of cases to be discussed in closed session before going into closed session to discuss the cases.

After this Court decided *Vermilya I*, the case returned to the trial court and was reassigned to Judge Manvel Trice. On July 23, 2019, the trial court scheduled a show-cause hearing requiring plaintiffs to explain why they did not submit a closing order for entry. Plaintiffs submitted a proposed order granting them relief in the form of an injunction

enjoin[ing] [defendant] from further non-compliance with the Open Meetings Act and [directing defendant to] comply with Open Meetings Act § 8(e) by identifying specific pending litigation by name when meeting in closed session to consult with its attorney regarding trial or settlement strategy in connection with specific pending litigation.

Defendant objected to the proposed order on the ground that the trial court never ordered an injunction. Defendant also argued that entry of the order would violate its right to due process by issuing an injunction without an evidentiary hearing to determine the necessity of injunctive relief. The trial court agreed with defendant and conducted an evidentiary hearing to determine if injunctive relief was necessary. At that hearing, defendant's members and staff testified that, beginning in December 2016, defendant changed its policies and began naming cases to be discussed in closed session. In addition, on January 14, 2020, defendant voted to amend the public meeting minutes for its January 12, 2016 meeting, which was the subject of this action, to identify the case that was discussed in closed session. Both parties filed post-hearing briefs. Before any decision was issued, however, Judge Trice disqualified himself on the ground that he had "personal knowledge of disputed evidentiary facts concerning the proceeding." The case was reassigned to Judge Darnell Jackson.

In September 2020, plaintiffs moved to file a supplemental complaint to add allegations of other past instances, dating as far back as 2007, in which defendant entered closed sessions to discuss pending litigation without disclosing the names of the cases to be discussed. The trial court

-2-

denied the motion. Defendant filed a motion for summary disposition under MCR 2.116(C)(10). Defendant argued that there was no need for an injunction because, given its changed policy and practices since December 2016, there was no ongoing violation and no risk of any real and imminent danger of irreparable harm to plaintiffs to warrant an injunction. In support of its motion, defendant relied in part on testimony presented at the evidentiary hearing before Judge Trice. Plaintiffs argued in response that an injunction was necessary because defendant had not implemented written policies for compliance with the OMA or corrected minutes of other past meetings to include the names of the cases discussed in closed session at those meetings.

The trial court concluded that plaintiffs failed to satisfy their burden of proving a real and imminent danger of irreparable injury to warrant issuance of an injunction. The court observed that the last instance in which defendant entered into a closed session without naming the specific litigation occurred in 2016. Although plaintiff had presented evidence of several such instances occurring between 2007 and 2016, plaintiffs failed to take action to obtain injunctive relief until after this Court decided *Vermilya I*, and then only when Judge Trice "prodd[ed] them for a closing order." The court held that plaintiffs could not show an imminent danger of irreparable injury, and therefore, granted defendant's motion for summary disposition.

## II. SUPPLEMENTAL COMPLAINT

Initially, plaintiffs argue that the trial court erred by denying their motion to file a supplemental complaint. We disagree.

Although plaintiffs labeled their proposed pleading a supplemental complaint, their arguments in support of the pleading also referenced standards related to amended pleadings. "Courts are not bound by the labels that parties attach to their claims." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691; 822 NW2d 254 (2012). Therefore, it is appropriate to consider standards applicable to both an amended complaint and a supplemental complaint. A motion to amend pleadings under MCR 2.118 is reviewed for an abuse of discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). A trial court's decision on a party's motion to file a supplemental pleading is also discretionary. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 207; 920 NW2d 148 (2018). "An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes." *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020).

MCR 2.118(E) provides that a court, on motion of a party and on reasonable notice and just terms, may permit a party to file a supplemental pleading "to state transactions or events that have happened since the date of the pleading sought to be supplemented, whether or not the original pleading is defective in its statement of a claim for relief or a defense." Supplementation of pleadings is distinct from amendment of pleadings, which is governed by MCR 2.118(A) to (D). "A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading." MCR 2.118(A)(1). Otherwise, "a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." MCR 2.118(A)(2). "A court must give a particularized reason for denying leave to amend a pleading, and acceptable reasons for denial include undue delay, bad faith or dilatory motive by the party seeking leave, repeated failures to cure deficiencies

-3-

after previously allowed amendments, undue prejudice to the nonmoving party, and futility." *Kostadinovski v Harrington*, 321 Mich App 736, 743; 909 NW2d 907 (2017).

Plaintiffs' proposed supplemental complaint alleged additional OMA violations that occurred *before* plaintiffs filed their initial complaint. Plaintiffs argue that this Court's decision in *Citizens for a Better Algonac Community Sch v Algonac Community Sch*, 317 Mich App 171; 894 NW2d 645 (2016) (*CBACS*), was a new event that supported the filing of a supplemental pleading. However, the purpose of a supplemental pleading is to state "transactions" or "events" that have happened since the date of the pleading to be supplemented. Although *CBACS* was decided after plaintiffs filed their original complaint, the supplemental complaint sought to allege additional OMA violations on the basis of events that occurred well before plaintiffs filed their initial complaint. The purpose of the supplemental complaint was not to raise new violations that occurred since the filing of the original complaint, but to add allegations of past events to establish grounds for an injunction consistent with the standards enunciated in *CBACS*. Therefore, the additional claims did not come within the standards of a supplemental pleading under MCR 2.118(E).

Furthermore, *CBACS* did not announce a new standard. In *CBACS*, this Court noted that MCL 15.271(1) allows a party to file "a civil action to compel compliance or to enjoin further noncompliance with the OMA . . . ." *CBACS*, 317 Mich App at 178 (quotation marks omitted). Citing *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 138; 860 NW2d 51 (2014), this Court stated:

> According to our Supreme Court, MCL 15.271(1) "contemplates an *ongoing* violation, precisely the circumstances in which injunctive relief is appropriate." *Speicher*, 497 Mich at 138, 860 NW2d 51 (emphasis added). As construed by the *Speicher* Court, MCL 15.271(4) allows for an award of court costs and actual attorney fees, but only if a party succeeds in obtaining the injunctive relief described in the statute. *Id*. [*CBACS*, 317 Mich App at 178.]

Thus, *CBACS* was not a case of first impression, but a case applying the standard previously enunciated in 2014 by our Supreme Court in *Speicher*.

The trial court also cited plaintiffs' failure to explain their delay in alleging the past OMA violations as a ground for denying their motion. *CBACS*, the case that purportedly alerted plaintiffs to the correct standards for obtaining an injunction under the OMA, was decided on September 8, 2016, seven months after plaintiffs filed their original complaint, but before the court granted partial summary disposition for defendants on March 1, 2017, and before it granted summary disposition for plaintiffs as to Count I. In any event, even before *CBACS* was decided, plaintiffs should have been aware that, under *Speicher*, they could have alleged additional OMA violations occurring before January 12, 2016, to show that the alleged violation on January 12, 2016, was an ongoing violation that supported a request for injunctive relief. The trial court properly rejected plaintiffs' argument that they could not have alleged such a claim until *CBACS* was decided. The trial court did not abuse its discretion by citing plaintiffs' undue delay in alleging the past OMA violations as grounds for denying their motion to amend or supplement their complaint.

### III. EVIDENTIARY HEARING TRANSCRIPT

Plaintiffs next argue that the trial court erred by considering the evidentiary hearing testimony offered by defendant in support of its motion for summary disposition when the judge who presided at that hearing disqualified himself before deciding any factual issues related to that hearing. We disagree. Evidentiary issues are generally reviewed for an abuse of discretion, *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004), but any preliminary questions of law related to the admissibility of evidence are reviewed de novo, *Dep't of Transp v Frankenlust Lutheran Congregation*, 269 Mich App 570, 575; 711 NW2d 453 (2006).

Defendant's motion for summary disposition was brought under MCR 2.116(C)(10), which provides that summary disposition may be granted when there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When summary disposition is sought under MCR 2.116(C)(10), a party is required to submit affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted, and such evidence must be considered by the trial court. MCR 2.116(G)(3)(b) and (5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018). A trial court may only consider substantively admissible evidence when ruling on a summary disposition motion filed pursuant to MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); MCR 2.116(G)(6). "However, although the evidence must be substantively admissible, it does not have to be in admissible form." *Airgas Specialty Prod v Mich Occupational Safety & Health Admin*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 351105); slip op at 16 (quotation marks and citation omitted).

Plaintiffs rely on *Christopher v Nelson*, 50 Mich App 710; 213 NW2d 867 (1973), and other cases applying that decision, to argue that when the judge who presides at the evidentiary hearing later disqualifies himself before deciding any issues related to that hearing, the successor judge is prohibited from considering any evidence at that hearing without the consent of the parties. We conclude that this case is factually and legally distinguishable from *Christopher*, and that the successor judge in this case was not prohibited from considering the evidentiary hearing testimony, not for the purpose of resolving disputed factual issues, but to determine whether there were any genuine issues of material fact related to plaintiffs' request for injunctive relief.

In *Christopher*, the trial judge who presided at a bench trial died after trial, but before he made a decision or issued findings of fact and conclusions of law. *Id*. at 711. The parties "consented to the submission of the record" to the successor judge, who found that the defendant was not at fault and therefore entered a verdict of no cause of action. *Id*. at 711-713. On appeal, the parties disputed whether this Court should review the verdict de novo or under the clearly erroneous standard. *Id*. at 711. The plaintiff noted that former GCR 1963, 517 (the predecessor to MCR 2.613(C)) provided that the trial judge's findings of fact should not be set aside unless clearly erroneous "because of the special opportunity of the trial judge to assess the credibility of the witnesses," but argued that this rule should not apply because the successor judge "decided the case on the record made, and had no opportunity to hear the witnesses, observe their demeanor on the stand and personally assess the weight and credibility of their testimony . . . ." *Id*. This Court disagreed, stating:

We reject the contention. Our reasoning is that GCR 1963, 531[1] is specific in its application. By its own terms it applies to situations in which a verdict has been returned, or findings of fact and conclusions of law filed. The death of the judge who heard the case [b]efore his decision is made or his findings of fact and conclusions of law are filed results in an incomplete proceeding. It is in legal effect a mistrial. A new trial upon application to the successor judge is a matter of right. [*Id*. at 711-712.]

This Court held, however, that the parties' stipulation was "in legal effect a stipulation" that entitled the successor judge to "do whatever he would or could have done had he heard the case." *Id*. at 712 (quotation marks omitted). This Court therefore held that it was appropriate to review the successor judge's findings of fact "to determine, not whether we would have reached the same result, but rather whether his findings of fact were clearly erroneous." *Id*. at 712. Conversely, in *Dillon v Dillon*, 134 Mich App 423, 426-428; 350 NW2d 892 (1984), in which the trial judge retired before fully resolving the division of marital assets in a divorce and there was no indication that the parties consented to the successor judge deciding that issue on the basis of the evidence presented at the trial before the original judge, this Court held that the successor judge was without authority to resolve that issue in "the absence of any factual findings and conclusions of law by the initial trial judge . . . ."

Applying *Christopher* to the instant case, we agree that after the judge who presided at the evidentiary hearing disqualified himself before deciding any issues related to that hearing, the successor judge lacked the authority to decide disputed factual issues on the basis of the evidentiary hearing testimony without the parties' consent. However, we disagree that defendant was not permitted to rely on testimony presented at that hearing to demonstrate factual support for its grounds for summary disposition. In this case, the successor judge was not asked to consider the evidentiary hearing testimony to decide disputed facts. Rather, defendant cited testimony from the evidentiary hearing for the sole purpose of demonstrating factual support for its grounds for summary disposition, and the trial court considered the testimony, not to resolve disputed factual issues, but only to determine whether plaintiffs could establish a genuine issue of material fact that defendant should be subject to an injunction. In this context, the trial court's analogy of the evidentiary hearing testimony to deposition testimony used for the same purpose on summary disposition was apt. Consistent with the principles for reviewing a motion under MCR 2.116(C)(10), the successor judge did not determine issues of witness credibility or decide disputed issues of fact, but only considered whether there was evidence, viewed in a light most favorable to plaintiff, that would support plaintiffs' entitlement to the relief they sought. The court ruled in defendant's favor because the evidentiary hearing testimony demonstrated factual support for defendant's position that an injunction was not necessary, and plaintiff failed to set forth specific facts showing the existence of a genuine issue of material fact with respect to that issue. There was no error in considering the evidentiary hearing testimony in this context.

---

[1] GCR 1963, 531 addressed the authority of a successor judge when a judge before whom an action was tried is unable to perform by reason of death, sickness, or other disability after a verdict has been returned or findings of fact and conclusions of law have been filed.

## IV. AFFIRMATIVE DEFENSES

Plaintiffs also argue that defendant's motion for summary disposition was based on affirmative defenses that should have been considered waived because defendant did not assert them in a responsive pleading as required by the court rules. We disagree. The trial court's application and interpretation of court rules are legal questions subject to de novo review. *Webb v Holzheuer*, 259 Mich App 389, 391; 674 NW2d 395 (2003).

"Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118." MCR 2.111(F)(3). "An affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993). The party asserting an affirmative defense "accepts the plaintiff's allegation as true and even admits the establishment of the plaintiff's prima facie case, but denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings." *Id*. MCR 2.111(F)(3)(a) lists the following examples of affirmative defenses: "contributory negligence; the existence of an agreement to arbitrate; assumption of risk; payment; release; satisfaction; discharge; license; fraud; duress; estoppel; statute of frauds; statute of limitations; immunity granted by law; want or failure of consideration; or that an instrument or transaction is void, voidable, or cannot be recovered on by reason of statute or nondelivery . . . ." "In addition to those affirmative defenses specifically listed in MCR 2.111(F)(3)(a), an affirmative defense includes any defense that seeks to foreclose a plaintiff from continuing a civil action for reasons unrelated to the plaintiff's prima facie case." *Kelly-Nevils v Detroit Receiving Hosp*, 207 Mich App 410, 420; 526 NW2d 15 (1994). "The failure to raise an affirmative defense as required by the court rule constitutes a waiver of that affirmative defense." *Stanke*, 200 Mich App at 312; MCR 2.111(F)(2).

In *Kelly-Nevils*, 207 Mich App at 412-413, the defendant hospital harvested organs from the plaintiff's decedent after receiving consent from an individual who falsely represented that he was the decedent's brother and only living relative. The plaintiff brought suit against the defendant for "unlawful mutilation" of the decedent's body. *Id*. at 413. The defendant asserted in defense that it was shielded from liability by MCL 333.10108(3), which is part of the Uniform Anatomical Gift Act (UAGA). *Id*. at 414, 419. This Court rejected the plaintiff's argument that the defendant waived the defense of good faith under the UAGA by failing to assert it as an affirmative defense in its first responsive pleading. *Id*. at 419-420. This Court agreed that UAGA immunity was an affirmative defense because the defendant acknowledged that the plaintiff "stated a cause of action under Michigan common law, but asserted that UAGA § 10108(3) exempts it from liability." *Id*. at 419. However, this Court held that the defendant adequately pleaded a good-faith defense by alleging in its answer that the hospital and its staff "observed their legal duties and acted in a 'careful, prudent, proper, and lawful' manner with regard to their care of plaintiff's decedent" although it did not use the specific words "good faith." *Id*. at 420.

Plaintiffs argue that defendant's compliance with a prior injunction, its adoption of policies and practices to comply with the OMA, the lack of irreparable harm or limited or no harm, and its good faith, all of which the trial court considered in denying plaintiffs' request for an injunction, were affirmative defenses that defendant waived by failing to assert them in its answer to the complaint. Plaintiffs argue that these defenses go beyond rebutting plaintiffs' prima facie case

because defendant asserted them to justify or provide an explanation for defendant's legal conduct. However, the relevant standard for determining whether a defense is an affirmative defense is not whether it "goes beyond" rebutting a prima facie case, but whether it asserts a legal reason to deny relief to a plaintiff despite the plaintiff's ability to make a prima facie case. In this case, none of the so-called defenses conceded plaintiff's ability to establish a prima facie case of entitlement to injunctive relief. On the contrary, they directly controverted that plaintiffs were able to demonstrate the existence of an ongoing violation or the risk of "real and imminent danger of irreparable harm" necessary to obtain injunctive relief. *Wilkins v Gagliardi*, 219 Mich App 260, 275-276; 556 NW2d 171 (1996). Defendant's arguments that its compliance with a prior injunction, its adoption of policies and practices to comply with the OMA, the lack of irreparable harm, and its good faith in changing its practices to comply with the OMA were defenses that directly contradicted plaintiffs' claim of an ongoing violation or an imminent danger of harm. Plaintiffs' reliance on *Kelly-Nevils* is misplaced because the Court in that case did not make a blanket holding that any good-faith based defense is always an affirmative defense. It was an affirmative defense in that case because the defendant admitted performing the acts alleged in the plaintiff's complaint, but invoked the immunity provision of the UAGA. In sum, the trial court did not err by holding that defendant's asserted defenses were not affirmative defenses, and thus defendants did not waive the defenses by failing to assert them in a responsive pleading as required by MCR 2.111(F)(3).

## V. SUMMARY DISPOSITION

Plaintiffs also argue that defendant was not entitled to summary disposition. "We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). "A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 474-475; 776 NW2d 398 (2009). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (Quotation marks and citation omitted). The trial court's decision whether to grant or deny injunctive relief under the OMA is reviewed for an abuse of discretion. *CBACS*, 317 Mich App at 177.

The OMA affords three remedies for violations: monetary damages against a public official for an intentional OMA violation, MCL 15.273, injunctive relief, MCL 15.271, and invalidation of a public body's decision, MCL 15.270. *Id*. at 181. Private citizens may commence a civil action to compel a public body to comply with the OMA or to enjoin further noncompliance. MCL 15.271(1). A plaintiff has a viable cause of action for injunctive relief when "a public body is not complying with the OMA." *CBACS*, 317 Mich App at 181, citing MCL 15.271(1). The phrase "not complying" indicates that the statute "contemplates an ongoing violation." *CBACS*, 317 Mich App at 181, quoting *Speicher*, 497 Mich at 138. The "ongoing violation" requirement does not mandate "a showing that a public body, at the time an OMA suit is filed, is in the midst of deliberating a particular matter in violation of the OMA." *CBACS*, 317 Mich App at 183. "Rather, if there has been a pattern, within a relevant time frame, reflecting that a public body has been

regularly engaging in activity that violates the OMA, an action for injunctive relief under MCL 15.271 would be proper . . . ." *Id*. "[T]he pattern itself could establish 'ongoing' violations." *Id*. However, the mere occurrence of an OMA violation does not automatically warrant injunctive relief. *Id*. at 183-184. A party who does succeed in obtaining injunctive relief under the OMA is entitled to "recover court costs and actual attorney fees for the action." MCL 15.271(4).

"Injunctive relief should be granted only when justice requires it, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable harm." *Wilkins*, 219 Mich App at 276. A violation of the OMA, by itself, is not sufficient to constitute a real and imminent danger of irreparable injury. *Id.* at 275-276. "The granting of injunctive relief is within the sound discretion of the trial court and must be based on the facts of the particular case." *Id*. at 276. In *Wilkins*, this Court affirmed the trial court's denial of an injunction when the defendant's new rules addressed the OMA problem, there were no similar incidents in the 20-month period between the violation and the trial court's decision, and the defendant's membership had substantially changed. *Id*.

Defendant's witnesses testified that even before this Court decided *Vermilya I* and held that the OMA required a public body to disclose the name of a specific case to be discussed in closed session, it changed its practice and had been consistently disclosing the names of cases to be discussed in closed session since December 2016, despite that this requirement was not expressly stated in the language of the statute. Defendant demonstrated examples of its consistent compliance with the statute at meetings since December 2016. Plaintiffs did not counter this evidence of defendant's recent compliance, but instead attempted to argue that defendant's past nine-year history of violating MCL 15.671(1) and MCL 15.269(1), from 2007 to 2016, established a pattern of repeated violations that constituted an ongoing violation subject to injunctive relief. Plaintiffs also argued that defendant never amended the minutes of past meetings where closed sessions were held to state the name of the case discussed in closed session, and it never amended its bylaws to incorporate the OMA requirements.

The trial court did not err by finding that the evidence, construed in plaintiffs' favor, did not establish a genuine issue of material fact that defendant was engaged in an ongoing violation of the OMA such that there was a real and imminent danger of irreparable harm if an injunction did not issue. Defendant's witnesses and the minutes of its meetings established that defendant began naming the litigation to be discussed in closed session in December 2016, before this Court decided *Vermilya I* in July 2018. Defendant had remained in compliance since then. This evidence established a commitment to compliance and a clear break from defendant's past pattern of concealing the names of specific cases to be discussed in closed session. Defendant's past violations arose from a misunderstanding of the OMA requirements, which were eventually clarified in *Vermilya I*. This evidence established that there was no longer an ongoing violation, and that plaintiffs were not at risk of immediate and irreparable harm. *Wilkins*, 219 Mich App at 275-276.

Although plaintiffs attempted to counter defendant's evidence by showing that defendant did not formally amend its bylaws or otherwise adopt a written policy implementing the new requirement, plaintiffs' entitlement to injunctive relief required them to demonstrate an ongoing violation and a risk of a real and imminent danger of irreparable harm. Plaintiffs did not refute defendant's evidence of consistent compliance with the OMA since December 2016. For the same

-9-

reason, plaintiffs' argument that defendant's failure to amend the minutes of past meetings other than the meeting of January 12, 2016, also is unavailing. Plaintiffs' evidence established a pattern of violations at past meetings, but the past meetings were not the subject of plaintiffs' complaint in this case and plaintiffs did not refute defendants' evidence of a pattern of consistent compliance with the OMA requirement since December 2016. Because there was no evidence of ongoing violations since then, plaintiffs failed to show that there was a genuine issue of material fact regarding their entitlement to an injunction.

We also reject plaintiffs' argument that the trial court improperly restricted the scope of their relief to that requested in their first amended complaint. The substance of plaintiffs' argument is that the trial court should have considered the additional past OMA violations in determining whether plaintiffs were entitled to an injunction. However, the trial court did not ignore this evidence. Rather, the trial court concluded that defendant's established pattern of compliance with this Court's interpretation of the OMA negated the likelihood of future noncompliance. The court's analysis indicates that it was aware of defendant's past violations, but concluded that they did not establish an ongoing violation when the past violations were based on a mistaken interpretation of the statute before *Vermilya I*, and the evidence established a consistent pattern of compliance since December 2016.

In sum, the trial court did not err by granting defendant's motion for summary disposition. And because plaintiffs failed to establish an ongoing violation or a risk of a real and imminent danger of irreparable harm if an injunction did not issue, the trial court did not err by refusing to grant judgment in plaintiffs' favor under MCR 2.116(I)(2).

## VI. COSTS AND ATTORNEY FEES

Finally, the trial court did not err by refusing to award plaintiffs costs and attorney fees under MCL 15.271(4). Because plaintiffs were not successful in obtaining injunctive relief, they were not entitled to costs and attorney fees. *CBACS*, 317 Mich App at 184, 186.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

-10-